GREENE v. SHOEMAKER, 1998 NCBC 4

| | |
|---|---|
| STATE OF NORTH CAROLINA<br>COUNTY OF WILKES | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>97-CVS-2118 |

STATE OF NORTH CAROLINA
COUNTY OF WILKES

EDWARD F. GREENE and JOE
SEVERT, Individually and Derivatively
on Behalf of COMMUNITY
BANCSHARES, INC.

    Plaintiffs,

v.

RONALD SHOEMAKER, DWIGHT
PARDUE, REBECCA ANN
SEBASTION, COLIN SHOEMAKER,
GILBERT MILLER, ROBERT
RICKETS, BRENT ELLER, RAY
FERGUSON and COMMUNITY
BANCSHARES, INC.

    Defendants,

and

COMMUNITY BANCSHARES, INC.

Counterclaim and Third Party Plaintiff,

v.

EDWARD F. GREENE, JOE SEVERT,
STEPHEN GREENE, and SEVERT &
GREENE,

    Counterclaim and Third Party
    Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
97-CVS-2118

**ORDER AND OPINION**

{1} This matter is before the Court on the Defendants' Motion to Dismiss based upon the Plaintiffs' failure to make demand for relief before filing a shareholder derivative action as required by N.C. Gen. Stat. Sec. 55-7-42, failure to plead fraud with particularity and failure to state a claim upon which relief may be granted. For the reasons set forth below, the Motion is granted.

*Christopher D. Lane of McElwee & McElwee, attorney for Plaintiffs.*

*Richard A. Vinroot of Robinson, Bradshaw & Hinson, attorney for the individual defendants.*

*Rex M. Lamb, III of Smith, Gambrell & Russell and John S. Willardson of Willardson, Lipscomb & Beal, attorneys for Community Bancshares, Inc.*

## Factual Background

{2} Community Bancshares, Inc. ("CBI" or the "Company") is a North Carolina corporation and a holding company for Wilkes National Bank. Wilkes National Bank is a small community bank doing business in and around Wilkes County. It has been in existence since 1990 and has grown steadily since its inception.

{3} Plaintiff Edward F. Greene resides in Wilkes County, owns approximately 16% of the outstanding common stock of CBI and is a member of its Board of Directors.

{4} Prior to his death, Joe Severt was a resident of Roanoke County, Virginia and was a member of the Board of Directors of the Company. Mr. Severt died subsequent to the filing of the Complaint in this action. The Estate of Joe Severt owns approximately 16% of the outstanding common stock of the Company. The Court notes with some concern that an Executor or Administrator of the Estate of Mr. Severt has not been substituted as a party herein by either Plaintiffs or Defendants.

{5} The individual defendants are each directors and shareholders of CBI. Defendant Pardue is Chairman of the Board of Directors and defendant Ron Shoemaker is also the President and Chief Executive Officer of CBI.

{6} Beginning in the fall of 1996 a rift developed between Mr. Greene and Mr. Severt and the defendants, particularly Ron Shoemaker. They disagreed over fundamental issues such as composition of the Board of Directors and business strategy. In the spring of 1997 Greene and Severt unsuccessfully challenged the slate of directors supported by the defendants and Greene attempted to unseat Pardue as Chairman. The parties then negotiated unsuccessfully to arrange a buyout of Plaintiffs' stock at $12.00 a share. Greene and Severt solicited an offer from FCFT, a West Virginia bank, to purchase all the stock of CBI for stock in FCFT valued at $13.00 a share. After an analysis from an outside investment banking firm found the FCFT offer to be a "fair price," but expressed the opinion the shareholders could receive more in the future if the bank continued to grow, the defendants, over plaintiffs' objection, voted not to submit the offer to the shareholders. Another proxy fight appeared likely for the May 1998 shareholders meeting.

{7} The friction between the parties escalated in November of 1997 when the defendants proposed, over Plaintiffs' objection, that CBI issue 500,000 shares of new stock in a private placement limited to persons who owned less than 10% of CBI's stock. The purchase price proposed was $12.50 per share and the stock could not be resold for one year. Since Severt and Greene held more than 10% each, they were excluded from purchasing the new stock and their percentage ownership of the Company would have been reduced if the stock had been issued.

{8} The actions that followed the vote to issue the new stock are fundamental to the Court's analysis of the Motion to Dismiss. First, Greene and Severt sent a letter dated November 25, 1997 (the "Demand Letter") to the Board of Directors of CBI. The letter contained only one demand: that the Board "hereby cease and desist in continuing with any efforts directed towards the sale of restricted stock passed by a 5-4 vote at the November 20, 1997 meeting of the corporation."

{9} On December 12, 1997, seventeen days after sending the Demand Letter and before receiving any response to it from the Board, Greene and Severt filed their first complaint (the "First Complaint") in Superior Court in Wilkes County in case number 97-CVS-2082. In the First Complaint Greene and Severt asserted both individual and derivative claims. The First Complaint sought temporary and permanent injunctions preventing completion of the private placement, the only relief demanded in the Demand Letter. In addition, Greene and Severt asserted derivative claims against the other five directors for breach of fiduciary duty and fraud and sought removal of the defendants under N.C. Gen. Stat. Sec. 55-8-09. The First Complaint also contained causes of action seeking damages for the Plaintiffs individually.

{10} On December 17, 1997, Defendants entered into a settlement with Greene and Severt which provided that CBI would not pursue the proposed private placement and would pay Greene and Severt's attorney fees. In return, Greene and Severt agreed only to take a voluntary dismissal without prejudice in

the then pending lawsuit. The agreement was executed on December 18, 1997 and on December 23, 1997 Greene and Severt took a voluntary dismissal without prejudice in the first lawsuit as required by the settlement agreement.

{11} The same day that the voluntary dismissal without prejudice was taken with respect to the First Complaint, Greene and Severt filed the original complaint in this action (the "Second Complaint"). In the Second Complaint Greene and Severt asserted both individual and derivative claims. The Second Complaint contains derivative claims for breach of fiduciary duty and removal of directors identical to those that were pled in the First Complaint. Added to the Second Complaint were derivative causes of action for corporate waste, conversion, fraud and punitive damages based in part upon the payment of legal fees associated with the aborted private placement and settlement as well as legal fees incurred in May 1997 presumably involving the proxy fight with Greene and Severt. Underlying Plaintiffs' various derivative causes of action is the fundamental position that the private placement had no business justification other than to dilute their percentage ownership of the corporation. Plaintiffs want the corporation to recover from the other directors all expenses associated with the private placement, including the settlement fees paid to Plaintiffs. As punishment for these actions, Greene and Severt also seek removal of the directors. Greene and Severt also seek injunctive relief to require CBI to permit their counsel to attend Board of Directors meetings and require that all Directors meetings be recorded. Plaintiffs added a new paragraph alleging that demand on the Board of Directors would be futile. See, Second Complaint, paragraph 66.

{12} Following the filing of the Second Complaint, the parties again entered into negotiations for the purchase of the shares of CBI owned by Greene and Severt. Again those negations were fruitless. Another dispute arose between the parties with respect to the term of Defendant Eller on the Board of Directors. Plaintiffs amended the Second Complaint to add a tenth claim for relief for declaratory judgment with respect to the length of Eller's term.

{13} Another proxy fight ensued at the May 1998 shareholders meeting and Severt and Greene were once again unsuccessful in their attempt to gain control of the Board of Directors.

{14} The matter is now before the Court on Defendants' Motion to Dismiss the Second Complaint as amended.

## Applicable Statutes

{15} At issue on this motion is application of N.C. Gen. Stat. Sec. 55-7-42. Demand., which provides:

> No shareholder may commence a derivative proceeding until:
>
> > (1) A written demand has been made upon the corporation to take suitable action; and
> >
> > (2) 90 days have expired from the date the demand was made unless, prior to the expiration of the 90 days, the shareholder was notified that the corporation rejected the demand, or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period.

## Legal Conclusions

### A. Plaintiffs' derivative claims.

{16} The first six counts of the Amended Complaint in this action assert derivative claims on behalf of the Company. Defendants move to dismiss those claims on the basis that no demand has been made upon the

Board of Directors as required by the statute. Plaintiffs attempt to counter Defendants' defense of failure to make demand with three arguments. First, Plaintiffs claim that adequate demand has been made. Second, Plaintiffs originally claimed that demand was futile and that the futility exception to the demand requirement survived amendment of the North Carolina Business Corporation Act in 1995. Plaintiffs have abandoned this claim in their Memorandum in Opposition to Defendants Motion to Dismiss. However, the Court will address that issue in order to insure that the law is clear on that point and because it is pertinent to other issues. Third, Plaintiffs make clear their determination to pursue these claims by making demand if their complaint is dismissed and urge the court to skip ahead and appoint an independent committee from outside the Board of Directors to decide whether these claims should be pursued on behalf of the Company as provided in N.C. Gen. Stat. Sec. 55-7-44(f).

{17} Plaintiffs assert that they satisfied the demand requirement of the statute by (a) sending their letter of November 25, 1997 and (b) filing the First Complaint. Neither document fulfills the demand requirement.

{18} In determining whether the demand requirement has been met the Court must compare the derivative claims asserted in a complaint against the specific demands a plaintiff has made prior to filing suit. The demand must be made with sufficient clarity and particularity to permit the corporation, through independent directors or an outside advisory committee, to assess its rights and obligations and determine what action is in the best interest of the company. The letter of November 25, 1997 makes only one demand: that the Company cease and desist in its efforts to complete the private placement. That demand was satisfied when the Company withdrew the private placement. The letter cannot serve as a basis for any other claim since it requested no other action on the part of the Board and specifically did not request that the Board take any action to pursue the claim asserted in the first six counts of the Amended Complaint. In order to satisfy the requirements of the statute, the demand must contain specific requests for action by the Board of Directors.

{19} Even if the letter of November 25, 1997 had been sufficient to meet the statutory requirements, Plaintiffs filed both the First Complaint and the Second Complaint before the expiration of the 90-day waiting period set forth in the statute. They did not give the Company time to act on the request. While Plaintiffs could have moved the Court to shorten the 90-day waiting period upon a showing of irreparable injury, they did not do so. Thus, if the letter of November 25, 1997 is the "demand' upon which they rely, the Plaintiffs failed to meet the statutory requirement in two respects. They filed derivative claims not encompassed in their demand letter and they did so before the statutory waiting period had expired, without moving for expedited treatment upon a showing of irreparable injury.

{20} Plaintiffs' reliance on the First Complaint as their "demand" is deficient in three respects. First, a complaint may not provide the basis for a demand. The statute clearly provides that a written demand is a prerequisite to filing suit. To hold that the filing of a complaint, which was itself subject to dismissal for failure to meet the demand requirement, can satisfy the demand requirement for a second complaint would defeat the purpose of the statute. The statutory scheme was designed to give the Board of Directors the opportunity and obligation to review the claims before the corporation was required to incur the fees and expenses associated with litigation. Second, the Second Complaint contained claims that were not asserted in the First Complaint and were, in part, based upon settlement of claims asserted in the First Complaint. Thus, no adequate demand with respect to the derivative claims was made on the Board of Directors prior to institution of the Second Complaint. Third, even if the First Complaint was considered a demand, the statutory waiting period had not expired when the Second Complaint was filed.

{21} For the reasons set forth above, the Court finds that the derivative claims in the first six counts of the Second Complaint as amended should be dismissed for failure to make demand as required by N.C. Gen. Stat. Sec. 55-7-42.

{22} Plaintiffs concede that the futility exception to the demand requirement no longer exists in North Carolina. It is absolutely clear that the legislature intended to adopt the universal demand requirement and eliminated the futility exception when it passed the 1995 North Carolina Business Corporation Act (the

"1995 Act"). Current N.C. Gen. Stat. Sec. 55-7-42 is identical to Section 7.42 of the American Bar Association Revised Model Business Corporation Act (the "Model Act"). See, ABA, Rev. Model Business Corp. Act Ann. Sec. 7.42 (1990), reprinted in 45 Bus. Law. 1241, 1244 (1990). The Official Comment to Section 7.42 of the Model Act states that it requires a demand in all cases in order to eliminate the time and expense inherent in litigating the futility exception. The legislative history in North Carolina makes it clear that this section of the 1995 Act was intended to create the same universal demand requirement contained in the Model Act. See, for example, the January, 1995 Annual Report of the North Carolina Commission on Business Laws and the Economy which not only indicates that the 1995 Act was generally modeled after the Model Act, but specifically states with respect to derivative actions:

> The Commission believes that the amended provisions of the Revised Model Act relating to derivative proceedings should be adopted in North Carolina . . . the Revised Model Act clarifies many issues that are left cloudy by case law which should make the use of the procedure more efficient and less costly and time consuming. For example, much derivative litigation has dealt with the issue of whether it is necessary for the plaintiff to make demand on the board of directors to redress the wrong complained of before bringing suit. The Revised Model Act requires a demand to be made in all cases thus eliminating the time and expense of litigating the necessity for demand.

> 1995 Annual Report of the Commission on Business Laws and the Economy at p. 11.

{23} Elimination of language in the predecessor statute [N.C. Gen. Stat. Sec. 55-7-40(b)(1989)], which recognized the futility exception, is also a clear indication of the legislature's intent to adopt the universal demand requirement.

{24} There are two other generally recognized benefits of the demand requirement that are worth noting in connection with this matter. First, the demand requirement gives the corporation the opportunity to seek alternative dispute resolution. It may find a way to satisfy the putative class representative without the necessity of litigation, thus sparing the corporation needless litigation expense. Alternatively, it may undertake to pursue and resolve the claims itself. While the former is not likely in this case since the parties have already been through mediation and are engaged in a bitter fight for control of the corporation, the latter opportunity has not been given a chance since no demand was made. That leads to the second and, perhaps, most important benefit of the demand requirement. The demand requirement reinforces the basic norms of corporate governance by protecting the ability of the directors to make a business judgment about what is in the best interest of the corporation and all of its shareholders. The demand is the trigger that sets in motion the remainder of the statutory scheme. That scheme places the burden upon the directors to make the initial determination about whether the claim should be pursued on behalf of the corporation and whether the corporation itself should pursue it. After receipt of demand, if the corporation makes no inquiry and takes no action on the demand, the shareholder is free to pursue the claim as long as the shareholder meets the requirements of N.C, Gen. Stat. Sec. 55-7-41 to fairly and adequately represent the interests of the corporation in enforcing the right. If the corporation elects to pursue the claim or right, it may do so. The statutory scheme further provides that the Court must dismiss a derivative claim if one of several specified groups of independent persons determines, after conducting a reasonable inquiry, that maintenance of litigation to pursue the claims is not in the best interests of the corporation. Thus, the statute places the burden to make the initial business judgments upon the Board of Directors who have more knowledge about the business than the Court. The Court is then in a position to review the actions of the Board in context of the claims and determine whether or not the directors have carried out their statutory and fiduciary duties in the manner prescribed by the statute and in the exercise of sound business judgment. Significantly, how the Board decides to proceed can also determine which party shoulders the burden of proof in the derivative proceeding. See, N.C. Gen. Stat. Sec. 55-7-44.

{25} Consideration of that overall statutory scheme is important in assessing the third defense raised by plaintiffs in response to the Motion to Dismiss. In oral argument and in their supplemental response to the Motion to Dismiss, Plaintiffs make it clear that if the Complaint is dismissed they will make demand and

reinstitute suit if the demand is not met. For that reason, plaintiffs urge the Court to skip the demand process, determine that there are no independent directors on CBI's Board and appoint an advisory committee to fulfill the directors responsibility as if the corporation had made a motion for the Court to do so. Such a course has the practical appeal of speeding the process. It also has the legal effect of depriving the Board of Directors of control of the initial decisions it has the statutory right and obligation to make. It would render the statutory process established by the legislature meaningless. The legislature's effort to eliminate litigation over futility would be wasted. The statutory process was established for a reason and it must be followed. It may be that Plaintiffs will make written demand on the corporation. Such demand should be clear with respect to the claims it requests that the corporation assert and which of the directors those claims should be asserted against. Faced with such specific demands, the Board must make a judgment about how it will proceed. It may determine that there are independent directors who can act as a committee to decide what is in the best interests of the corporation and direct those members to make the necessary investigation. It may decide that there are no independent directors and ask the Court to appoint an advisory committee. It may, out of an abundance of precaution, come directly to the court and ask for appointment of an advisory committee even though it believes that there are independent directors. It could even have the advisory committee determine whether or not to pursue the counterclaims asserted against the Plaintiffs. An advisory committee could recommend settlement of the claims. It could decide that the corporation rather than the Plaintiffs should proceed with the litigation. It could recommend against proceeding with the claims. Whatever decisions are made, they will be subject to review by the Court under the business judgment rule on the basis of the business judgments underlying the decisions. How the decisions are made will impact the burden of proof. Under North Carolina's statutory scheme, the Board rather than the Court is empowered to make the initial decisions upon receipt of a clear demand and the Court is to review those decisions under the business judgment rule. To hold otherwise would reinsert the concept of futility into the statutory scheme in direct contravention of the intention of the legislature.

### B. Plaintiffs' nonderivative claims.

{26} Defendants have also moved to dismiss the fraud claims asserted for failure to comply with N.C. R. Civ. P. 9(b) requiring that fraud be pled with particularity. At oral argument in this case the Court understood Plaintiffs' counsel to take the position that the fraud claims asserted were derivative and not individual claims. As such they are subject to dismissal for the reasons set forth above and the Court need not rule on their sufficiency under Rule 9. The Court also understood from the statements of counsel for all parties that the issues with respect to Mr. Eller's term on the Board were resolved as a result of actions taken at the last shareholders' meeting and therefore the Tenth Count in the Amended Complaint is moot.

{27} Plaintiffs have also requested declaratory relief under Count Seven of the Second Complaint in the form of an order requiring the Company to permit counsel for the Plaintiffs to attend meetings of the Board of Directors and under Count Eight in the form of an order requiring the company to record all meetings of the Board of Directors. There is no North Carolina case law on point on either issue and no statute specifically granting directors the right to counsel during board meetings or the right to record them. This Court holds that such matters should be left to the discretion of the directors. The manner in which meetings are held is a matter in which the Courts should not intervene as long as no process is being invoked which prohibits the directors from fulfilling their duties. Directors have many alternatives available to them. If they are unsure about corporate action, they can obtain advice from corporate counsel, abstain from voting on issues, vote no, or request a postponement or adjournment of a vote to get additional information or to consult with counsel outside the meeting. The decision should be controlled by a majority vote of the board. Where, as is apparent here, there is an ongoing power struggle for control of the board, dissident directors do not have the right to have counsel present to advise them in connection with the power struggle. Such a right would convert directors meetings into mini-legal battles in the larger war with each director having to have his or her own counsel present to protect their individual interests. It is unlikely the shareholders would benefit from such a development.

{28} Likewise the decision about whether to record meetings should be left to the sound discretion of a majority of the board members. Whether recording the meetings would be beneficial or detrimental will

depend on the composition of the board and the circumstances. Typically, the courts should not intervene in those types of decisions.

{29} For the foregoing reason, Counts Seven and Eight of the Amended Complaint are dismissed for failure to state a claim upon which relief may be granted.

{30} It is therefore, ordered, adjudged and decreed:

1. Defendants' Motion to Dismiss the first six counts in the Amended Complaint for failure to comply with the requirements of N.C. Gen. Stat. Sec. 55-7-42 is granted.

2. Defendants' Motion to Dismiss the Seventh and Eighth counts in the Amended Complaint pursuant to N.C. R. Civ. P. 12(b)(6) is granted.

3. The remaining counts in the Amended Complaint require no further action from the Court and therefore, the Amended Complaint should be and is hereby dismissed.

This the 24th day of September, 1998.