Egelhof v. Szulik, 2008 NCBC 2

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 04 CVS 11746

ANDREW EGELHOF, Derivatively on Behalf of
Red Hat, Inc.

                                        Plaintiff,

        vs.

MATTHEW J. SZULIK, KEVIN B. THOMPSON,
PAUL J. CORMIER, TIMOTHY J. BUCKLEY,
MARK H. WEBBINK, ALEX PINCHEV,
ROBERT F. YOUNG, EUGENE J. McDONALD,
F. SELBY WELLMAN, MARYE A. FOX,
WILLIAM S. KAISER, DR. STEVE ALBRECHT
and H. HUGH SHELTON

                                        Defendants.

**ORDER ON MOTION FOR
ATTORNEY FEES**

## ORDER AND OPINION

{1}     This matter is before the Court on Defendants' Motion for Attorneys' Fees filed after the Court granted Defendants' Motion to Dismiss.  The Court has concluded that it will not award attorney fees on the basis asserted by Defendants.  However, the Motion has brought to the Court's attention certain actions on the part of Mr. Egelhof, the shareholder representative, and his out-of-state counsel which are of sufficient concern to the Court that the Court will enter non-monetary sanctions.

*Robbins Umeda & Fink, LLP by Brian J. Robbins, Jeffrey P. Fink, and Steven R. Wedeking; Garlitz & Williamson, PLLC by F. Lane Williamson for Plaintiff Andrew Egelhof.*

*Womble Carlyle Sandridge & Rice, PLLC by Pressly M. Millen and Christopher W. Jones; Wilmer Cutler Pickering Hale and Dorr, LLP by Jeffrey B. Rudman, William H. Paine, and*

*Christopher Davies for Defendants Matthew J. Szulik, Kevin B. Thompson, Paul J. Cormier, Timothy J. Buckley, Mark H. Webbink, Alex Pinchev, Robert F. Young, Eugene J. McDonald, F. Selby Wellman, Marye A. Fox, William S. Kaiser, Dr. W. Steve Albrecht, and H. Hugh Shelton.*

Tennille, Judge.

{2}     This is a purported shareholder derivative action in which the failure of counsel to communicate with their client in violation of the Rules of Professional Conduct, the failure of the client to communicate with counsel in contravention of his fiduciary duties, the needless rush to file a complaint, the filing of defective pleadings, and the solicitation of a plaintiff unqualified to fulfill the significant duties of a plaintiff in a shareholder derivative action all converged to create a situation in which neither the firm nor the client fulfilled their duties and obligations. Confirming their slapdash approach to representation, Plaintiff's out of state counsel appeared and argued the motion for sanctions without being admitted *pro hac vice* (conduct constituting the unauthorized practice of law in this state).

{3}     The above listing of Plaintiff's counsel is problematic.  Mr. Williamson signed the original and amended complaints as local counsel, but did not draft the pleadings.  Mr. Robbins and Mr. Fink were listed as "of counsel" along with their firm.[1]  Mr. Wedeking is the only lawyer in the firm to file a *pro hac vice* motion and be admitted to practice in North Carolina in this case.  He appeared at the hearing on the motion to dismiss.  Mr. Fink appeared on behalf of Mr. Egelhof and actually argued the pending motion for sanctions.  Mr. Robbins and Mr. Fink personally represented Mr. Egelhof in his deposition ordered by the Court which took place in Wichita, Kansas, where Mr. Egelhof then resided.  Mr. Fink and Mr. Robbins never filed *pro hac vice* motions and were therefore never admitted to practice in North Carolina in this action.  Defendants have not moved for sanctions against Mr.

---

[1] References to the "firm" herein will refer to Robbins Umeda & Fink, LLP.

Williamson, and the conduct which concerns the Court is not attributable to him.[2]  By appearing and arguing the sanctions motion, Mr. Fink has waived any defense that the Court does not have jurisdiction to sanction him.[3] Through the appearances of Mr. Wedeking and Mr. Fink, the firm has come under the jurisdiction of the Court.  The Court can find no guidance on the issue of whether Mr. Robbins has appeared in this action by representing his client in an out-of-state deposition of Plaintiff in a North Carolina action. The Court concludes as a matter of law that he has made a sufficient appearance by signing as "of counsel" and defending Mr. Egelhof's deposition.  Mr. Wedeking and Mr. Fink both described Mr. Egelhof as Mr. Robbins's client. Messrs. Wedeking, Robbins, and Fink are all licensed to practice in California.[4]

---

[2] The fact that sanctions have not been sought against Mr. Williamson, a member of the North Carolina State Bar Disciplinary Hearing Commission, does not mean that other North Carolina lawyers cannot learn from the position Mr. Williamson occupied in this matter. Had Defendants' counsel elected to do so, they could have pursued their remedies against local counsel, particularly in light of the failure to see that Mr. Fink was admitted *pro hac vice*.  Only local counsel signed the pleadings which are asserted to be in violation of Rule 11. The Court does not believe that it is the primary duty of local counsel to know and communicate with a client who has an established relationship with out-of-state counsel to the same extent as the primary counsel.  The local lawyer's role is more limited, and local counsel should be able to rely on primary out-of-state counsel to communicate with the client. Where local counsel signs pleadings and briefs, they are representing to the Court that the positions taken therein have merit and that Rule 11 has been followed.  Local counsel would be well advised to consider as a practical matter some of the things a court might consider in reviewing the pleadings.  Is there a real plaintiff capable of fulfilling his or her fiduciary duties?  Is the complaint being filed in a race to the courthouse?  Are the allegations based on known facts or media stories?  Has there been any effort to review the books and records of the company to support demand futility claims?  Are the claims meritorious, and are there allegations that would support a finding that red flags existed to warrant board action in a derivative case?  Is there clear precedent supporting or contrary to the positions taken?
[3] It is difficult for the Court to fault Mr. Williamson for permitting Mr. Fink to argue without being admitted *pro hac vice* when the Court failed to make any inquiry of his status when he rose to argue the motion for sanctions.  Nor did defense counsel raise any such issue.
[4] Information about the firm and its lawyers can be found at ruflaw.com. A fourth lawyer, Mr. Louis A. Kerkhoff, apparently drafted the original complaint.  (Pl.'s Mem. Law Opp'n Defs.' Mot. Att'ys' Fees, Decl. Louis A. Kerkhoff Supp. Pl.'s Opp'n Defs.'Mot. Att'ys' Fees ¶ 2.) In doing so it does not appear that he had any contact with Mr. Egelhof. (Pl.'s Mem. Law Opp'n Defs.' Mot. Att'ys' Fees, Decl. Louis A. Kerkhoff Supp. Pl.'s Opp'n Mot. Att'ys' Fees ¶¶ 2–3 (In listing the various tasks of organizing and analyzing information prior to drafting the complaint, Mr. Kerkhoff does not mention meeting or interviewing Mr. Egelhof.))  Mr. Kerkhoff was a third-year associate when he drafted the complaint, and Mr. Wedeking was a second-year associate when he came to argue the motion to dismiss.  Mr. Kerkhoff's efforts in

{4}    The Robbins Umeda & Fink law firm has appeared in another recent case before the Court captioned *In Re Pozen Shareholders Litigation*, Orange County, 04 CVS 1540 (hereinafter the "*Pozen* case"). Mr. Williamson was local counsel for the plaintiff in that case as well. Mr. Wedeking appeared *pro hac vice* and argued the motion to dismiss. Mr. Robbins and Mr. Fink appeared as "of counsel." The *Pozen* case was also a shareholder derivative action. Mr. Millen, counsel for Defendants in this case, also represented a different set of defendants in the *Pozen* case. The *Pozen* case was dismissed for failure to adequately plead demand futility under Delaware law by Order dated November 10, 2005. *See In Re Pozen S'holders Litig.*, 2005 NCBC 7 (N.C. Super. Ct. Nov. 10, 2005) http://www.ncbusinesscourt.net/opinions/2005%20NCBC%207.htm. That order and its date have relevance to the issues in this case.

{5}    The original Complaint was a derivative action against Red Hat, Inc. ("Red Hat") and several of its officers and directors ("Defendants"). (Compl. ¶ 1.) The Complaint alleged that several of the named officers and directors engaged in insider trading, thereby breaching their fiduciary duty to Red Hat (Compl. ¶¶ 61–65) and that all Defendants breached their fiduciary duty to Red Hat (Compl. ¶¶ 66–71). The Complaint alleged that the officer and director Defendants abused their control of Red Hat (Compl. ¶¶ 72–76), engaged in the "gross mismanagement" of Red Hat (Compl. ¶¶ 77–81), caused the waste of Red Hat's corporate assets (Compl. ¶¶ 82–85), and were unjustly enriched by those actions (Compl. ¶¶ 86–87). In support of these allegations, the Complaint cited heavily from press releases issued by Red Hat. (Compl. ¶¶ 34–47.) The Amended Complaint pled with more particularity the actions of the officers and directors. (Am. Compl.) The Amended Complaint did not include any additional causes of action. (Am. Compl. ¶¶ 124–51.) Defendants filed a motion to dismiss the Amended

---

drafting the complaint are detailed in his affidavit filed in support of Plaintiff's opposition to the motion for sanctions. He has not been admitted *pro hac vice*.

Complaint on September 29, 2005. The motion was granted and the claims dismissed with prejudice by Order of Judge Tennille on March 13, 2006. (Order ¶ 68.) The Order dismissed the claims based on Mr. Egelhof's loss of standing as a shareholder and the Amended Complaint's failure to establish demand futility under Delaware law. (Order ¶ 2.)

{6} According to statements made by Mr. Wedeking and Mr. Fink in oral argument, the firm has a "shareholder relations department" which is evidently charged with communicating with clients who are serving as shareholder derivative or class action plaintiffs in lawsuits being handled by the firm. It is unclear if the shareholders relations department is populated by lawyers, legal assistants, or public relations personnel. It was clear from statements made by both Mr. Wedeking and Mr. Fink at oral argument that neither of them had ever met Mr. Egelhof nor knew anything about him. Mr. Wedeking did not know how many shares Mr. Egelfhof owned, and Mr. Fink erroneously represented to the Court that he owned hundreds of shares.

{7} When Mr. Wedeking appeared in this Court and knew absolutely nothing about his client, the Court requested that he at least find out how many shares of Red Hat stock his client owned. That request obviously prompted some inquiry which produced the information that Mr. Egelhof was no longer a shareholder, a fact communicated to the Court and counsel by e-mail. When Mr. Fink appeared and argued the motion for sanctions, he did not know much more than Mr. Wedeking about the client. His excuse was that Mr. Egelhof was originally Mr. Robbins's client. The Court ordered that Mr. Egelhof's deposition be taken. That deposition produced the facts which are of concern to the Court. Mr. Robbins and Mr. Fink both defended Mr. Egelhof's deposition.

{8} Defendants' Motion for Attorneys' Fees has two possible grounds. First, Defendants contend that both the original Complaint and the Amended Complaint defectively alleged demand futility and that the defect was known to Plaintiff before filing the Complaint or at the very least became

abundantly clear with this Court's ruling in *Pozen*. For reasons set forth below, the Court declines to enter sanctions on the ground of defective pleading of demand futility alone. Second, Defendants contend that Plaintiff lost all standing to pursue this shareholder derivative action when he sold his stock on December 31, 2005, and that continuation of this lawsuit after that date warrants the imposition of sanctions including attorney fees.[5] Defendants are correct that some form of sanction is appropriate for the conduct of Plaintiff and his out-of-state counsel in connection with Mr. Egelhof's failure to fulfill his fiduciary duties and his obligations to the Court. However, the Court declines to award attorney fees as a part of the sanctions because of the timing involved.

{9}     With respect to the first basis for sanctions, the Court would decline to sanction Plaintiff and his counsel if defective pleading were the only ground for concern in this action. Demand futility under Delaware law has generated significant litigation and decisional law. R. Franklin Balotti & Jesse A. Finkelstein, The Delaware Law of Corporations & Business Organizations § 327.3 (6th ed. 2006). It is an area fraught with difficulty and not susceptible to bright-line tests.[6]   This Court's opinion in *Pozen* dismissing the complaint for failure to adequately plead demand futility under Delaware law did not plow new ground. *Pozen*, 2005 NCBC 7 ¶ 2. The Court applied established Delaware principles. *Id.* at ¶¶ 41–51. It is true that certain of the allegations in support of demand futility asserted on

---

[5] Defendants and Plaintiff both state that Mr. Egelhof sold his Red Hat shares on December 31, 2005. (Defs.' Mem Law Supp. Mot. Att'ys' Fees 3; Pl.'s Mem. Law Opp'n Defs.' Mot. Att'ys' Fees 3.) The Trade Confirmation from E*Trade Securities dated December 30, 2005, shows that Mr. Egelhof sold his shares on December 30, 2005. (Egelhof Dep. Ex. 4, July 13, 2006.) The Court will refer to December 31, 2005, as the date of sale throughout the opinion.
[6] Unlike Delaware, North Carolina has elected to remove this additional layer of dispute from shareholder litigation by eliminating demand futility and requiring every shareholder to make demand upon the Board of Directors before filing a derivative action. *See* N.C. Gen. Stat. § 55-7-42 (statute no longer contains a demand futility exemption); *see also Greene v. Shoemaker*, 1998 NCBC 4 ¶ 22 (N.C. Super. Ct. Sept. 24, 1998), http://www.ncbusinesscourt.net/opinions/1998%20NCBC%204.htm ("It is absolutely clear that the legislature intended to adopt the universal demand requirement and eliminated the futility exception . . . .").

behalf of both the *Pozen* plaintiff and Mr. Egelhof by the Robbins Umeda & Fink firm had been soundly rejected by the Delaware courts. *Id.* at ¶¶ 41–81. It is further true that many of the allegations in this Complaint were not grounded in fact but based on media reports or published analyst opinions (Compl. ¶¶ 36–60) and that the Delaware courts have frowned upon such pleadings. *See Beam v. Stewart*, 833 A.2d 961, 981–82 (Del. Ch. 2003) (noting with dissatisfaction the litigants' reliance on media reports and morning newspapers and failure to investigate records such as board minutes). It is also true that this derivative action was filed in a needless rush to court, having been filed only thirty-one days after the restatement of income by Red Hat[7] and after a class action had already been filed on behalf of the shareholders. (Defs.' Mem. Law Supp. Mot. Att'ys' Fees 2 n.1.) The Complaint in this action was also filed without any inspection of the books and records of the company that Delaware courts have repeatedly admonished counsel to pursue. *See Beam*, 833 A.2d at 981–82. These shortcomings in the Complaint do raise red flags for the Court in connection with the conduct of this litigation by Plaintiff's counsel. They demonstrate a disregard for or lack of attention to the rules of procedure as well as court decisions and admonitions. However, the Court does not believe that the initial pleadings in this case would, standing alone, support Rule 11 sanctions. The test for demand futility under Delaware law is always fact specific and contextual. *See Pozen*, 2005 NCBC 7 ¶¶ 47–49 (discussing the application of Delaware law to demand futility). The application of the law is done on a case-by-case basis. It is, therefore, an area in which Rule 11 sanctions should be invoked sparingly and with caution.

{10} Timing is also a factor here. The Complaint was filed August 18, 2004. The Amended Complaint was filed July 21, 2005. Defendants' Motion

---

[7] Red Hat restated earnings on July 19, 2004. Carolyn Pritchard, <u>Red Hat restates first-quarter earnings</u>, CBS Marketwatch.com, July 19, 2004. This complaint was filed August 18, 2004.

to Dismiss was filed September 19, 2005. Plaintiff's response to the motion to dismiss was filed October 31, 2005. The Order dismissing the *Pozen* case was entered November 10, 2005. Defendants' reply to Plaintiff's response to the motion to dismiss was filed November 15, 2005. Mr. Egelhof sold his shares in Red Hat on December 31, 2005. (Defs.' Mem. Law Supp. Mot. Att'ys' Fees 3; Pl.'s Mem. Law Opp'n Defs.' Mot. Att'ys' Fees 3.) Oral arguments on the motion to dismiss were originally scheduled for December 20, 2005, but were heard February 2, 2006, upon Plaintiff's motion. The Order dismissing *Egelhof* was entered March 13, 2006.

{11}   The Court's decision and order in *Pozen* was not entered until after the original *Egelhof* Complaint and Amended Complaint were filed; therefore Plaintiff's counsel did not have the benefit of that decision when drafting the pleadings. *See supra* ¶ 9. What is significant for later analysis is that Mr. Egelhof was not informed of the decision which could have had a direct impact on his case. (Egelhof Dep. 84–85, July 13, 2006.) That disregard is especially important in light of the request by defense counsel that Plaintiff reconsider going forward with the litigation following the *Pozen* decision — a request that was <u>not</u> conveyed to Plaintiff. (Egelhof Dep. 85–86, July 13, 2006.) It is also important in light of Mr. Wedeking's admission at oral argument that there were no red flags to put the directors of Red Hat on notice that they had any obligation to take any action with respect to the advice provided by the company's outside accountants. (Defs.' Mem. Law Supp. Mot. Att'ys' Fees 3.) The Court's decision in *Pozen* focusing on the absence of red flags as required by Delaware law and the admitted absence of such red flags in the case at bar were both clearly important information a fiduciary would need to know, especially in light of a formal request by Defendants to reconsider pursuing the lawsuit or face sanctions if it were dismissed. Mr. Egelhof did not have that information, nor did the firm have the information that Mr. Egelhof had sold his shares. However, the firm should have possessed that information and in all probability would have but

for its failure to inform Mr. Egelhof of the developments in his case. The timing has influenced the Court's decision not to assess fees as a part of the sanctions. The motion to dismiss was fully briefed when the *Pozen* decision came out. The time and effort that remained was the lawyers' and the Court's time in preparing for and attending oral argument when the plaintiff had lost standing.

{12} It is significant that Mr. Egelhof possessed neither a significant ownership interest in Red Hat nor any experience to prepare him to act as a fiduciary seeking recovery of hundreds of millions of dollars on behalf of the company. In 2004, Mr. Egelhof purchased twenty-eight shares of Red Hat common stock for which he paid $710.50. (Egelhof Dep. Exs. 2, 3, July 13, 2006.) He sold those shares on December 31, 2005, for $756.98, earning a profit of $46.48. (Egelhof Dep. Ex. 4, July 13, 2006.) His Red Hat holdings constituted about 30% of his entire portfolio of $2,000 invested in his E-trade account. (Egelhof Dep. 91, July 13, 2006.) Mr. Egelhof's obvious concern was making a profit on his stock because he sold it as soon as he had a profit in it.[8] In short, Mr. Egelhof did not have a significant financial interest in the outcome of this litigation. While the size of ownership is not determinative of standing, a potential plaintiff's lack of a real financial stake in the litigation is a warning sign that he or she may not be willing or able to devote the time necessary to fulfill the fiduciary obligations imposed by law on a shareholder derivative plaintiff.[9] Even before the Complaint was filed, the firm had a larger financial stake in the litigation than Mr. Egelhof.

---

[8] Mr. Egelhof testified that he was in debt, needed the money, and just forgot about the lawsuit when he sold his stock. (Egelhof Dep. 41–42, July 13, 2006.) He believes he signed some letter saying he would hold on to his stock, but did not have a copy of it. (Egelhof Dep. 43–44, July 13, 2006.)

[9] As Mr. Fink admitted in oral argument, those duties included supervising counsel. The Private Securities Litigation Reform Act ("PSLRA") created heightened pleading requirements and more duties for the plaintiffs and their counsel in class action law suits. 15 USCS § 78u-4 (LEXIS through Jan. 7, 2008 legislation). *See Kafenbaum v. GTECH Holdings Corp.*, 217 F. Supp. 2d 238, 244–45 (R.I. 2002) (stating "a securities fraud complaint must also satisfy the heightened pleading requirements contained in . . . the PSLRA"). One of the purposes of the PSLRA is to ensure that class members' interests are protected. *In re*

{13}    Nor did Mr. Egelhof have the knowledge, background or experience to fulfill his fiduciary duties.  Although his testimony is somewhat ambiguous on the point, it appears fairly clear that this Kansas resident responded to an Internet solicitation from a California law firm looking for a plaintiff in a North Carolina action.  (Egelhof Dep. 46–50, July 13, 2006.)  At the time, he was twenty-four years old, had worked in various information technology roles at Kansas State University, and had a degree in business administration.  (Egelhof Dep. 15–18, July 13, 2006.)  He had little investing experience, no experience in litigation[10], no prior connection with the San Diego law firm, no personal knowledge of Red Hat and its operations, and a minor criminal record.  (Egelhof Dep. 30–36, 20–22, 39–40, July 13, 2006.)  In short, he lacked any credentials to act as a fiduciary for a company in multi-million dollar litigation.  The firm should have been aware of his holdings and inexperience.

{14}    Given his inexperience and miniscule financial interest in the litigation, it should come as no surprise that Mr. Egelhof played no significant role in the litigation process.  He had never met Mr. Robbins or Mr. Fink until the night before his deposition related to the sanctions motion.[11]  He had received and reviewed the original Complaint and the Amended Complaint.  (Egelhof Dep. 53–56, July 13, 2006.)  In total he had

_Rent-Way Secs. Litig._, 305 F. Supp. 2d 491, 518 (W.D. Pa. 2003) (citation omitted).  The PSLRA instructed that the "most adequate plaintiff" is the one that has "(1) 'the largest financial interest' in the relief sought by the class and (2) satisfies the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure." _Bassin v. Decode Genetics, Inc._, 230 F.R.D. 313, 316 (S.D.N.Y. 2005) (citations omitted).  Mr. Egelhof's diminutive stake in the litigation would most likely not qualify as making him the "most adequate plaintiff." However, the presumption of the most adequate plaintiff being the plaintiff with the largest financial stake does not apply in derivative actions. _In re Comverse Tech., Inc. Derivative Litig._ 06-CV-1849, 2006 U.S. Dist. LEXIS 88261, at *10–11 (E.D.N.Y. 2006).

[10] He had received class action notices in the past but been too lazy to fill them out and send them in.  (Egelhof Dep. 20–21, July 13, 2006.)

[11] Mr. Egelhof had a remote idea who Mr. Williamson was but had never met him (Egelhof Dep. 62–63, July 13, 2006) and it appears had never met or talked to any other lawyers in the Robbins Umeda & Fink law firm besides speaking to Mr. Robbins on the phone.  (Egelhof Dep. 50–52, 55 July 13, 2006.)  He made no reference to any communication with the shareholder relations department.  (Egelhof Dep. 50–52, July 13, 2006.)

devoted no more then five (5) hours to the litigation process. (Egelhof Dep. 58, July 13, 2006.) There is no indication in the record that he ever received copies of the correspondence from Defendants' counsel requesting reconsideration of his pursuit of the lawsuit, nor was he informed of the Court's decision in *Pozen* or the fact that a prior action in Delaware had been voluntarily dismissed.[12] He was not informed of the hearing on the motion to dismiss or the hearing on the motion for sanctions against him. (Egelhof Dep. 86–88, July 13, 2006.) He was not sent the order dismissing his case. (Egelhof Dep. 83, July 13, 2006.) Mr. Egelhof moved several times and failed to inform the law firm of his new address. (Egelhof Dep. 79, July 13, 2006.) There were significant periods of time when the firm did not know where to find him. (Egelhof Dep. 79–80, July 13, 2006.) It appears that neither the firm nor the client communicated with each other in any professional manner. The firm never informed the Court that the shareholder derivative plaintiff was missing. Mr. Egelhof did not even know how the firm had found out he sold his stock. (Egelhof Dep. 45, July 13, 2006.) Had the Court not sought the information, it appears likely that Mr. Egelhof's lack of standing might not ever have been discovered. Clearly, no one at the firm was concerned enough to even know how much stock he owned.

{15} The record in this case supports a finding that the firm of Robbins Umeda & Fink failed to keep its client informed of significant developments in the lawsuit, including a motion for sanctions which could directly affect the client. The Rules of Professional Conduct of the North Carolina State Bar require:

> Rule 1.4: Communication
> (a) A lawyer shall:
> > (1) promptly inform the client of any decision or circumstance with respect to which the client's

---

[12] Defense counsel brought that dismissal to the attention of the firm along with a request to reconsider pursuit of the lawsuit. It does not appear that Mr. Egelhof was ever notified of that development or request.

informed consent, as defined in Rule 1.0(f), is required by these Rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

. . . .

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

{16}   Mr. Egelhof's out-of-state counsel failed to comply with these rules. Mr. Egelhof was only partially responsible for those failures.

{17}   The firm treated the lawsuit as its own, made all litigation decisions without input from the client, and failed to keep the client and the Court informed of facts which were relevant to Mr. Egelhof's standing to pursue the litigation.  While there is no evidence that the firm knew that Mr. Egelhof had sold his stock and hid that information, it is clear that they made no effort to stay in touch with him and discern whether anything had happened which would have affected his standing.

{18}   For his part, Mr. Egelhof failed to fulfill his acknowledged fiduciary duties.[13]  He never initiated any contact with the firm to find out what was happening.  He took no action to manage his litigation and his counsel, a duty clearly recognized by Mr. Fink in oral argument.  He even failed to let counsel know where he could be contacted.  Both Mr. Egelhof and the firm knew he was not fulfilling his obligations.  He sold his stock for his own personal interests, without informing his counsel or the Court.  He had an affirmative duty to notify counsel and the Court before he sold his stock.  At the very least he was required to do so afterward.

{19}   Neither client nor counsel communicated with each other in a manner required of two fiduciaries.  Mr. Egelhof owed a fiduciary duty to the

---

[13] In his deposition, he acknowledged knowing that he was to remain a long term shareholder and act in the best interest of the corporation.  (Egelhoff Dep. 58–59, July 13, 2006)  He was less clear on his understanding of fiduciary duties and the meaning of a verified complaint. (Egelhoff Dep. 73–74, July 13, 2006).

corporation he sought to represent, and the firm owed a fiduciary duty to its client. The firm likewise had a duty to know its client and have confidence in the client's knowledge and ability to fulfill his or her fiduciary duties. Shareholders may not simply lend their name to a law firm to be used in litigation, nor may lawyers borrow the name and pursue litigation in the firm's interest. Nor may lawyers escape the responsibility for keeping clients informed of developments in a case by delegating that responsibility to a shareholders relations department; the obligation is a personal one residing with the lawyer handling the case.

{20} In this case, when the combination of all the factors is considered, sanctions are warranted. The plaintiff was a young novice investor with no litigation experience and miniscule stock holdings who responded to an Internet solicitation. The firm rushed to file a complaint on his behalf that was defective in a number of ways and clearly ignored existing Delaware decisions. Thereafter, neither the firm nor Mr. Egelhof fulfilled their responsibilities. Mr. Egelhof moved without telling the firm where he could be contacted, never took any affirmative action in connection with his lawsuit, and ultimately sold all of his stock, forgetting that he was even involved in the litigation. The firm never met him, didn't know much about him, and lost touch with him for months at a time. The firm never communicated with him with respect to ongoing motions and activities significant to the case and failed to transmit requests directed to him by defense counsel. Until his deposition was ordered by the Court, he was not even aware of the pending motion seeking sanctions against him. Mr. Fink made an appearance without taking steps to be properly admitted. Mr. Egelhof, the firm, and the individual lawyers have failed in their duties and responsibilities to each other and to the Court.

{21} Accordingly, the Court concludes that sanctions are appropriate. Those sanctions are directed to protecting the interests of parties whose

interests might be affected by representation by Mr. Egelhof, the firm or its individual lawyers.

{22} It is, therefore, ORDERED:

1. For a period of five years from the date of this order, Andrew Egelhof shall not act as a shareholder derivative plaintiff or a class action representative in litigation pending in the state courts of North Carolina;

2. Within thirty days of this order, Jeffrey P. Fink shall pay to the North Carolina State Bar and the Clerk of Court of Wake County an amount equal to the amounts he would have been required to pay had he properly filed a *pro hac vice* motion and been admitted to appear in this action.

3. For a period of five years from the date of this order, Brian J. Robbins, Jeffrey P. Fink, Steven R. Wedeking, and the law firm of Robbins Umeda & Fink, LLP are prohibited from appearing *pro hac vice* in the state courts of North Carolina.

4. Defendants' request for attorney fees and expenses is denied.

5. Mr. Williamson will insure that Mr. Egelhof receives a copy of this order.

This 4th day of February 2008.