STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
00-CVS-1018

TAMMY L. GARLOCK, JUDITH L.
JACOBS and RALPH W. JOHNSON,
individually and on behalf of
SOUTHEASTERN GAS & POWER, INC.,
a North Carolina corporation,

Plaintiffs,

v.

AUBREY L. HILLIARD,
SOUTHEASTERN GAS & POWER, INC.,
and SEG&P, LLC, a North Carolina limited
liability company,

Defendants.

ORDER AND OPINION

{1}   This matter comes before the Court on cross motions seeking dismissal pursuant to 12(b)(6) of the North Carolina Rules of Civil Procedure.[FN1]  At issue are the prerequisites to filing a shareholder derivative action, the application of the unfair trade practices statute in the context of both the employment relationship and the formation of corporations, and the requirements for pleading fraud with particularity. For the reasons stated below the Court holds that: 1) Plaintiffs lack standing to assert derivatives claims and such claims are dismissed; 2) Plaintiffs' UDTP claim and civil conspiracy claims are inapplicable to Plaintiffs' dealings with Defendant Hilliard and are also dismissed; 3) Defendants' claims for fraud are pled with sufficient particularity to survive a motion to dismiss; however, 4) Defendants' negligence claims are an impermissible attempt to convert a contract claim into a tort action and are dismissed.

    The Bishop Law Firm by J. Daniel Bishop, A. Todd Capitano and D. Christopher Osborn, for Plaintiffs.
    Rayburn, Moon & Smith, P.A. by James B. Gatehouse and C. Richard Rayburn, Jr., for Defendants Southeastern Gas & Power, Inc.      and  SEG&P, LLC.
    Moore & Van Allen, P.L.L.C. by Karin M. McGinnis and Scott Tyler, for Defendant Aubrey L. Hilliard.

Factual Background

{2}   Aubrey L Hilliard ("Hilliard"), Tammy L. Garlock ("Garlock"), Judith L. Jacobs ("Jacobs") and Ralph W. Johnson ("Johnson") are all the shareholders of Southeastern Gas & Power, Inc. ("Southeastern"). Hilliard owns sixty-one percent of the outstanding stock, and the other three shareholders own thirty-nine percent.  Hilliard is the sole director of Southeastern.  SEG&P, LLC is owned entirely by Hilliard

{3}   Southeastern is in the business of marketing and distributing gas.  Prior to the formation of Southeastern, Plaintiffs and Hilliard worked together at a company engaged in a similar business.  In late 1997 all parties left their employment to form Southeastern and all of them became employed by Southeastern.  Hilliard handled sales, Johnson finances, and Garlock and Jacobs operations.  Hilliard was issued a majority ownership interest because he had the customer contacts.  All the parties agree that an oral agreement was entered into covering the manner in which all the shareholders would be compensated by Southeastern.  It is also undisputed that the original agreement was amended to reallocate Southeastern's profits.

{4}   Prior to the formation of Southeastern, Hilliard disclosed to Plaintiffs that he entered into a plea

bargain in connection with a federal income tax based prosecution. Plaintiffs contend that Hilliard failed to disclose certain key facts in connection with that plea bargain, the omission of which gives rise, in part, to their claim for fraudulent inducement.

{5}   Hilliard's plea bargain resulted in his spending over eight months in prison. Plaintiffs claim that during that period the oral agreement covering compensation was amended to reallocate more income to them based upon the unexpected length of Hilliard's incarceration and the increased amount of work required during his absence. Although the correct implementation of that reallocation agreement is disputed, the pleadings of both Plaintiffs and Hilliard agree on the essential terms of the original contract as well as the subsequent oral agreement.  (Pls.' Compl. at 2, 4, 5; Def. Hilliard  Mot. Dismiss, Answer, Countercl. at 6, 8, 9.)

{6}   Following his release from prison, Hilliard asserted his majority control.  As a result all three plaintiffs were either fired or quit their employment with Southeastern. Hilliard also formed a separate company, SEP&G, LLC ("SEG&P").  Plaintiffs assert that it was formed to divert business from Southeastern and as such represented usurpation of corporate opportunity, waste of corporate assets and conflict of interest on the part of Hilliard.  Hilliard contends that SEG&P was never activated and has not functioned in any way to compete with Southeastern.

{7}   Plaintiffs contend that after Hilliard returned from prison he did not properly allocate Southeastern's profits and that Southeastern owes them additional compensation under the amended reallocation agreement.

{8}   After their employment terminated, Plaintiffs filed this action.  At its core, this is an action for dissolution of the corporation under N.C.G.S. § 55-14-30(2)(ii).  In addition, Plaintiffs seek to recover compensation allegedly due them under the oral compensation agreement, as well as for fraud. Defendants contend that Plaintiffs conspired to improperly allocate the corporation's profits while Hilliard was in prison.

{9}   Pertinent to Southeastern's motion to dismiss are Plaintiffs' third (usurpation of corporate opportunity), fourth (misappropriation/waste of corporate assets), fifth (director self interest), tenth (unfair and deceptive trade practices) and eleventh (civil conspiracy) claims for relief.  Plaintiffs also seek to amend the complaint to add a twelfth claim for relief (breach of fiduciary duty).  To the extent that each of those claims for relief is cast as a shareholder derivative claim, Southeastern seeks dismissal for Plaintiffs' failure to make proper and timely demand and Plaintiffs' inability to fairly and accurately represent the interests of the corporation due to their own conflicts of interest.

{10}   Defendant Hilliard has moved to dismiss the eighth (state securities fraud), tenth (Unfair and Deceptive Trade Practices Act ("UDTPA")) and eleventh (civil conspiracy) claims for relief for failure to state claims pursuant to Rule 12(b)(6).  Defendant Hilliard alleges that (1) state securities fraud is barred by the statute of limitations; (2) the UDTPA is not applicable to Plaintiffs as employees or as holders or purchasers of securities; and (3) the "intracorporate conspiracy doctrine" prevents finding civil conspiracy between a corporation (SEG&P) and its agent (Hilliard).

{11}   Plaintiffs took a voluntary dismissal of the eighth claim for relief.  Plaintiffs filed their motion to dismiss Defendant Hilliard's first (misrepresentation), second (fraud), third (conversion), fourth (breach of duty) and fifth (negligence) claims for relief.  Plaintiffs allege that Hilliard's first four claims for relief are based on fraud which Hilliard failed to plead with particularity pursuant to N.C. R. Civ. P. 9(b).  Plaintiffs move to dismiss Hilliard's negligence claim based on Hilliard's absence of standing or privity.

{12}   Plaintiff seeks dismissal of Southeastern's second (fraud), third (negligence), fourth (negligent misrepresentation) and sixth (accounting/constructive trust) claims for relief.  Plaintiff alleges all above-named claims for relief sound in fraud and are not pled with particularity as required by N.C. R. Civ. P. 9(b).  Alternatively, Plaintiffs claim the "economic loss rule" bars Southeastern's negligence claim.

## II.
### Motion to Dismiss Plaintiff's Claims

{13}  When ruling on a motion to dismiss under Rule 12(b)(6), the court must determine "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted." *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987).  In ruling on a motion to dismiss, the court must treat the allegations in the complaint as true.  *See Hyde v. Abbott Lab., Inc.*, 123 N.C. App. 572, 473 S.E.2d 680, 682 (1996).  The court must construe the complaint liberally and must not dismiss the complaint unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.  *See id.*  When considering a motion under Rule 12(b)(6), the court is not required to accept as true any conclusions of law or unwarranted deductions of fact in the complaint.  *Sutter v. Duke*, 277 N.C. 94, 176 S.E.2d 161 (1970).  When the complaint fails to allege the substantive elements of some legally cognizable claim, or where it alleges facts which defeat any claim, the complaint should be dismissed under Rule 12(b)(6).  *See Hudson Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 511 S.E.2d 309 (1999).  When applying this standard, it must be kept in mind that when fraud is alleged, the circumstances constituting fraud must be pled with particularity.  N.C.  R.  Civ. P. 9(b).  *See also Terry v. Terry*, 302 N.C. 77, 273 S.E.2d 674 (1981).

### A.
### Plaintiffs' Derivative Claims

{14}  Central to Plaintiffs' derivative claim on behalf of Southeastern is the application of N.C.G.S. § 55-7-42 which provides:
No shareholder may commence a derivative proceeding until:

>   1.     A written demand has been made upon the corporation to take suitable action; and

>   2.     90 days have expired from the date the demand was made unless, prior to the expiration of the 90 days, the shareholder was notified that the corporation rejected the demand, or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period.

>   In applying the demand requirement, this Court has previously held:

>   In determining whether the demand requirement has been met the Court must compare the derivative claims asserted in a complaint against the specific demands a plaintiff has made prior to filing suit.  The demand must be made with sufficient clarity and particularity to permit the corporation, through independent directors or an outside advisory committee, to assess its rights and obligations and determine what action is in the best interest of the company.

*Greene v. Shoemaker*, 1998 NCBC 4 at 18 (No. 97 CVS 2118, Wilkes County Super. Ct. September 24, 1998) (Tennille, J.).

{15}  In this case, the only written pre-complaint demand was contained in a letter dated October 11, 1999 from Plaintiffs' counsel to C. Wells Hall, III, who at the time represented both Hilliard and Southeastern. (*See* Compl., Ex. A.)  That letter made no specific demand and did not request that the Board of Directors take any action or bring any lawsuit.  That letter simply questioned the rationale for the formation of SEP&G, LLP by Hilliard.  Mr. Hall previously wrote Mr. Bishop and stated that SEP&G, LLP would not be "activated."  Mr. Bishop's letter made no mention of a derivative action nor did it demand that Southeastern pursue any of the claims against Hilliard currently asserted as derivative claims.  That letter did not contain a demand of sufficient clarity and particularity to permit the corporation's Board of Directors to assess its rights and obligations.

{16}  It was not until the same day the complaint was filed that a formal demand letter was sent

requesting that the company "take appropriate action to obtain all relief sought derivatively on behalf of Southeastern in the complaint." (*See* Compl., Ex. C.) A written demand sent simultaneously with the filing of a complaint does not meet the demand requirements of the statute, nor may a complaint serve as the written demand. The statute clearly provides that a written demand is a prerequisite to filing suit:

> To hold that the filing of a complaint, which was itself subject to dismissal for failure to meet the demand requirement, can satisfy the demand requirement would defeat the purpose of the statute. The statutory scheme was designed to give the Board of Directors the opportunity and obligation to review the claims before the corporation was required to incur the fees and expenses associated with litigation.

*Greene v. Shoemaker*, 1998 NCBC 4 at 20 (No. 97 CVS 2118, Wilkes County Super. Ct. September 24, 1998) (Tennille, J.).

{17} Plaintiffs seek to distinguish this case from *Greene* on the basis that Hilliard was the sole director and majority shareholder. Those facts do not distinguish this case from *Greene*. Similarly, in *Greene*, the defendants controlled the Board of Directors. The Court made it clear in *Greene* that the futility exception had been eliminated from the statute and that the proper procedure was to make demand and, if the facts warranted, move the Court to shorten the period of time within which the corporation had to act. *Id.* at 19-22. The statutory scheme is designed to place the initial burden on the Board of Directors to act and to place the courts in the position of reviewing the actions of the Board under the business judgment rule.

{18} Plaintiffs argue that they sent a written demand with the complaint attached, that ninety days have now passed without Board action, and therefore the complaint should not be dismissed. To give effect to such an argument would defeat the purpose of the statutory scheme which insures the Board has a chance to fulfill its duties before the corporation incurs legal expenses or the litigation escalates into counterclaims and cross claims as it has in this case. By personally selecting themselves as representatives of the company, they have deprived the company of the opportunity to select independent persons to make the objective business decisions required under the circumstances. The statutory scheme permits the directors to act on the claims or select an independent party to act for them if they have a conflict. Here both Plaintiffs and Hilliard have conflicting interests. An independent advisory committee could have been appointed to decide what claims the company should pursue and against which parties. That was the result in *Greene* and could have been the result in this case if demand had been made properly.

{19} For the reasons set forth above the Court finds that the third (usurpation of corporate opportunity), fourth (misappropriation/waste of corporate assets), fifth (director self interest), tenth (unfair and deceptive trade practices) and eleventh (civil conspiracy) claims for relief are dismissed for failure to make proper demand as required by the statute. Since the civil conspiracy claim is a derivative claim and therefore dismissed, it is not necessary for the Court to determine the questions raised about intracorporate conspiracy.

{20} Plaintiffs also moved to amend to add a twelfth claim for relief for breach of fiduciary duty, also a derivative claim. Plaintiffs failed to make proper demand upon the corporation to take action on that claim, and therefore the twelfth claim for relief would be subject to dismissal. The twelfth claim for relief would also be moot based upon the representation of Defendants' counsel that SEP&G, LLC never became an active corporation. Accordingly, the motion to amend to add the twelfth claim for relief is denied based upon futility.

B.
Plaintiffs' UDTPA Claim

{21} Plaintiffs' tenth claim for relief for UDTPA is unclear. Paragraph 109 of Plaintiffs' complaint states that "Hilliard's conduct as alleged constitutes violation of N.C.G.S. § 75-1.1, by which plaintiffs have been damaged individually, and by which Southeastern has been damaged, in amounts exceeding

$10,000." "Hilliard's conduct" is said to refer to all the preceding allegations in the complaint.

{22}   To the extent the tenth claim for relief is a derivative claim seeking damages for Southeastern it is subject to dismissal for the reasons stated above.

{23}   In order to state a claim for unfair and deceptive trade practices, plaintiff must allege facts supporting a finding that (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff.  *See Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 464 S.E.2d 47 (1995).

{24}   Central to Plaintiffs' nonderivative UDTPA claim against Hilliard is determining what actions between Plaintiffs and Hilliard are *not* protected by the UDTPA.  The action must be "in or affecting commerce." *Id.*  The North Carolina courts have consistently held that the provisions of the UDTPA do not apply to securities transactions.  *See Oberlin Capital, L.P. v. Slavin,* 2000 NCBC 6 at 34-36 (No. 99 CVS 03447, Wake County Super. Ct. April 28, 2000) (Tennille, J.) and the cases cited therein.  Further, in *HAJMM Co. v.  House of Raeford Farms,* 328 N.C. 578, 403 S.E.2d 483 (1991), the Supreme Court held that where the purpose of a transaction was not part of an entity's business activities but to raise capital or organize the business, the UDTPA did not apply. The decision by Plaintiffs and Hilliard to form Southeastern constituted a securities transaction and an activity to raise capital and organize the business and was not part of Southeastern's daily business activities.  Accordingly, there is no purchase and sale transaction to which Chapter 75 would apply.  *See also Sara Lee Corp. v. Carter,* 351 N.C. 27, 31-33, 519 S.E.2d 308, 311-12 (1999).  Therefore, to the extent that this claim is an individual claim based upon the alleged misrepresentations by Hilliard in connection with the formation or organization of Southeastern it fails to state a claim upon which relief may be granted.

## C.
### Plaintiffs' Civil Conspiracy Claim Against Hilliard

{25}   Plaintiffs allege that Hilliard and SEG&P conspired to harm Southeastern and Plaintiffs.  Plaintiffs further seek to amend their complaint to allege that "Hilliard acted in his individual capacity, seeking to serve his personal, corrupt financial interest to unlawfully deprive plaintiffs of the value of their interest in Southeastern."  The amendment is sought to overcome the limitations of the intracorporate immunity doctrine.

{26}   The Fourth Circuit recognized the doctrine of intracorporate immunity in *Buschi v. Kirven,* 775 F.2d 1240, 1252 (4th Cir. 1985).  The doctrine holds that, since at least two persons must be present to form a conspiracy, a corporation cannot conspire with itself, just as an individual cannot conspire with himself.  *Id.*  Alleging that a corporation is conspiring with its agents, officers or employees is accusing a corporation of conspiring with itself.  *Id.*  The grant of immunity is not destroyed by suing the agent in his individual capacity.  *Id.*  Therefore, the unamended complaint for civil conspiracy is dismissed for failure to state a claim for which relief can be granted.

{27}   An exception to the doctrine of intracorporate immunity exists if the agent of the corporation has an "independent personal stake in achieving the corporation's illegal objective."  *Buschi v. Kirven*, 775 F.2d at 1252, *citing Greenville Publishing Co., v. Daley Reflector, Inc.,* 496 F.2d 391, 399 (4th Cir. 1974).  Plaintiff's proposed amendment does not save the civil conspiracy claim. The court in *Selman v. American Sports Underwriters, Inc.,* 697 F. Supp 225, 238 (E.D. Va. 1988) stated it well:

> [T]his "independent personal stake" exception must not be interpreted in too broad a manner or it will consume the entire intracorporate immunity doctrine. Certainly, under the most permissive interpretation of its language, an employee or agent of a corporation would always meet the exception since he would surely have an independent personal stake in the health and profitability of the corporation. Such an interpretation is overbroad. Instead, this court will follow the Fourth Circuit's implicit suggestion that the exception was meant to apply to facts

such as those of *Greenville Publishing*, 496 F.2d at 400. Here, the conspirator gained a direct personal benefit from the conspiracy, a benefit wholly separable from the more general and indirect corporate benefit always present under the circumstances surrounding virtually any alleged corporate conspiracy.

{28}   The facts at bar indicate that the only benefit accruing to Hilliard are the benefits directly associated with the profitability of SEG&P.  This type of personal stake is insufficient to plead civil conspiracy. Therefore, Plaintiffs' motion to amend complaint as to its eleventh claim for relief is denied.

II.
Motion to Dismiss Defendants' Claims

{29}   Rule 9(b) of the North Carolina Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  The Supreme Court states it as follows:

> [I]n pleading actual fraud the particularity requirement is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations. A constructive fraud claim requires even less particularity because it is based on a confidential relationship rather than specific misrepresentation. The very nature of constructive fraud defies specific and concise allegations and the particularity requirement may be met by alleging facts and circumstances "(1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which [plaintiff] is alleged to have taken advantage of his position of trust to the hurt of [defendant]."

*Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 679 (1981) (quoting *Rhodes v. Jones*, 232 N.C. 547, 548-, 61 S.E.2d 725, 725)).

A.
Southeastern's and Hilliard's Fraud Claims

{30}   In the instant case both Southeastern and Hilliard allege that Plaintiff Johnson (1) *at all times* from the formation of Southeastern until December 1999 calculated compensation and allocation of earnings; (2) did so as a part of *his activities at Southeastern*; and (3) *overstated* revenues, *decreased* expenses allocable to plaintiffs and failed to allocate some expenses.  These allegations are adequate to state the time, place and content of the fraudulent representation as to Johnson.  Therefore, Plaintiffs' motion to dismiss the fraud-related claims against Johnson is denied.

{31}   As to the fraud counterclaims against Garlock and Jacobs, Southeastern has alleged that Garlock and Jacobs owed fiduciary duties to Southeastern as officers and employees of the corporation and that in their position as officers Garlock and Jacobs "accepted this increased compensation with full knowledge of the fraudulent . . . records." (Southeastern's Answer at 20.)  Further, Southeastern alleges that it was harmed financially as a result of the fraudulent accounting.  These allegations by Southeastern satisfy the requirements for pleading constructive fraud because 1) as officers of Southeastern, Plaintiffs owed fiduciary duties to the corporation and were in a position of trust and confidence with the corporation and 2) it was this position of trust and confidence that provided the opportunity for fraud against the corporation. Consequently, Plaintiffs' motion to dismiss fraud-related claims of Southeastern is denied.

{32}   As to the fraud counterclaims against Garlock and Jacobs asserted by Hilliard, Hilliard alleges that his imprisonment forced him into a position of trust and confidence with Plaintiffs; Plaintiffs had complete control of the company, the financial statements and Hilliard's compensation during his period of imprisonment.  Hilliard alleges the trust and confidence he instilled in Plaintiffs provided them with the

opportunity to commit fraud against him. These allegations are sufficient to survive a motion to dismiss for failure to state a claim for fraud. Thereby, Plaintiffs' motion to dismiss Hilliard's fraud-related claims is denied.

## B.
### Negligence Claims of Southeastern and Hilliard

{33}   Both Southeastern and Hilliard have asserted negligence claims against Johnson and seek damages based upon his allegedly faulty calculations of the division of profits under the oral agreement. To assert an independent tort action in a breach of contract action, the tortious conduct must have some other aggravating element outside the breach of contractual duties. *See Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331 (4th Cir. 1998); *Strum v. Exxon Co.,* 15 F.3d 327(4th Cir. 1994). Defendants' allegations of general miscalculations fail to meet this standard. Therefore, Defendants' negligence claims are dismissed for failure to state a claim for which relief may be granted.

{34}   It should be noted that if there were miscalculations, Southeastern has a claim under contract for any overpayment to Johnson, Jacobs and Garlock. If Hilliard was shortchanged, he has a claim in contract against the corporation which owed him the money in the first instance. Since Hilliard controls the corporation, he can obviously pay himself what is due and has no damages. If the miscalculations were the result of a conspiracy among Johnson, Jacobs and Garlock to intentionally defraud Hilliard and Southeastern, both Defendants have fraud claims to cover those causes of action. Upon breach of contract, the proper cause of action lies in contract, not in tort for negligent performance of the contract. Accordingly, the Court grants leave to Southeastern to file an amended response containing any breach of contract claims it believes it has and leave to Hilliard to file any breach of contract he has against the corporation. Each should be filed within thirty days of the entry of this order.

{35}   This case, in which the parties organized a corporation and entered into an agreement dividing profits among the parties, involves only three real areas of dispute. First, have the profits been distributed in accordance with the terms of the agreement? Second, has the conduct of any party in connection with the organization or operation of the company risen to the level of fraud? Third, should the corporation now be dissolved pursuant to N.C.G.S. § 55-14-30(2)(ii)? Counsel are encouraged to focus on the core issues in this case rather than create a multitude of causes of action covering the same basic issues.

## III
### Conclusion

{36}   For the reasons stated above, Plaintiffs lack standing to assert derivative claims and such claims are dismissed. Likewise Plaintiffs' UDTP claim and civil conspiracy claims are inapplicable to Plaintiffs' dealings with Defendant Hilliard and are also dismissed.

{37}   Defendants' claims for fraud are pled with sufficient particularity to survive a motion to dismiss. However, Defendants' negligence claims are an impermissible attempt to convert a contract claim into a tort action and are dismissed.

{38}   Therefore, it is hereby **ORDERED, ADJUDGED** and **DECREED** that:

1.   Plaintiffs' third (usurpation of corporate opportunity), fourth (misappropriation/waste of corporate assets), fifth (director self interest), tenth (unfair and deceptive trade practices) and eleventh (civil conspiracy) claims for relief are dismissed.

2.   Plaintiffs' move to amend complaint to add a twelfth claim for relief (breach of fiduciary duty) is denied.

3.    Defendant Hilliard's fifth (negligence) claim for relief is dismissed.

4.    Defendant Southeastern's third (negligence) and fourth (negligent misrepresentation) claims for relief are dismissed.


This the 22 day of August, 2000.


Ben F. Tennille
Special Superior Court Judge
for Complex Business Cases

---

[FN1]The Court notes Defendant Hilliard's claim that Plaintiffs' motion to dismiss is untimely.  While technically true, N.C. R. Civ. P. 12(g) and 12(h)(2) provides that failure to state a claim upon which relief can be granted may be raised on a motion for judgment on the pleadings or at the trial on the merits. Consequently Plaintiffs could raise their failure to state a claim defense through a motion for judgment on the pleadings, and the court will treat Plaintiffs' motion as such.