# CIRCUIT COURT OF THE CITY OF NORFOLK

Alvin W. Willliams,
derivatively on behalf of
Dogsbollocks, Inc.,
t/a Bardo Restaurant

v.

Eric M. Stevens
and Karl Dornemann

April 1, 2013

Case No. CL12-4830

By Judge John R. Doyle, III

This matter is before the Court upon Eric M. Stevens and Karl Dornemann's demurrer, plea in bar, and motion craving oyer. Upon consideration of the filings, arguments presented, and applicable authority, the Court (1) denies the Defendants' motion craving oyer, (2) sustains the Defendants' plea in bar in part and overrules it in part, and (3) overrules the Defendants' demurrer.

## Background

Alvin W. Williams and the Defendants are the sole shareholders for Dogsbollocks, Inc., a closely-held Virginia Corporation "in the business of developing and managing restaurants, including Bardo of Norfolk." (Am. Comp. ¶ 5.) Williams alleges that "[o]n or about January 1, 2008, the Defendants wrongly and without any legal authority, did bar and prevent Williams from any further involvement in [the Corporation], including refusing to provide Williams with any information whatsoever concerning the operation of [the Corporation]." *Id.* ¶ 6. Williams further alleges that the Defendants, independently, developed a restaurant called Still-Worldly Eclectic Tapas in Portsmouth, Virginia. *See id.* ¶ 9. On August 8, 2011, Williams, by counsel, sent the Defendants a letter demanding

access to certain of the Corporation's financial records and requesting the name of the Corporation's accounting firm. (Def.'s Ex. 1A.) On September 8, 2011, Williams, by counsel, sent another letter to the Defendants accusing the Defendants of ignoring the letter of August 8, 2011, and giving the Defendants "notice pursuant to Section 13.1-774 of the Code of Virginia that . . . Williams, as a shareholder owning more than 5% of the [C]orporation be furnished" with certain of the Corporation's financial records. (Def.'s Ex. 1B.) Williams alleges that the Defendants were "unresponsive" to Williams's demands, "except repeatedly to report that 'records [were] being recreated following a computer failure'." (Am. Comp. ¶ 8.) Williams actually states in Paragraph 8 of his amended complaint that *the Corporation* "has been non-responsive." (Am. Comp. ¶ 8.) Williams clarifies elsewhere that the Defendants were responsible for the Corporation's non-responsiveness. *See id.* ¶¶ 1, 16-17.

On June 29, 2011, Williams filed a derivative suit against the Defendants on behalf of the Corporation. The Defendants demurred to Williams's complaint, and Judge Clarkson of this Court sustained the Defendants' demurrer, dismissed Williams's suit without prejudice, and granted Williams leave to amend his complaint. (Order of Nov. 14, 2012.) Williams filed an amended complaint on December 4, 2012. On December 20, 2012, the Defendants filed the demurrer, plea in bar, and motion craving oyer that are the subject of this opinion. The Court heard argument on these matters on March 12, 2013. At the conclusion of the March 12 hearing, the Court took the matters under advisement and now rules as follows.

*Analysis*

I. *The Defendants' Motion Craving Oyer*

"A motion craving oyer should be granted as to documents that form the basis of a plaintiff's claim." *In re Chinese Drywall Cases*, 80 Va. Cir. 69, 74 (2010). "Motions craving oyer should [thus] be limited to 'those cases where the cause of action depend[s] on a unique instrument, such as a deed, bond, or letters of probate'." *Bagwell v. City of Norfolk*, 59 Va. Cir. 205, 208 (2002), *quoting Stoney v. Franklin*, 54 Va. Cir. 591, 593, n. 1 (2001); *accord Langhorne v. Richmond Ry. Co.*, 91 Va. 369, 372 (1895) ("The right to crave oyer of papers mentioned in a pleading applies, as a general rule, only to deeds and letters of probate and administration, not to other writings, and only applies to a deed when the party pleading relies upon the direct and intrinsic operation of the deed."). *But see Millisor v. Anchor Point Ventures, L.L.C.*, 77 Va. Cir. 246, 256 (2008) (mentioning grant of a motion craving oyer of a Va. Code § 55-79.79(C) notice).

In the instant case, the Defendants have craved oyer of the documents purporting to satisfy the written demand requirement of Va. Code

§ 13.1-672.1(B)(1). (Mot. Craving Oyer ¶ 2.) Defendants correctly state that the written demand requirement embodied in Va. Code § 13.1-672.1(B)(1) is mandatory. *See infra* Part II. The question of whether a plaintiff has satisfied the written demand requirement, however, is more properly addressed in the context of a plea in bar. *See Richelieu v. Kirby*, 48 Va. Cir. 260, 263-64 (1999). Be this as it may, Williams has submitted the documents that, he purports, satisfy Va. Code § 13.1-672.1(B)(1), and the issue is the subject of a pending plea in bar (see below). (Def.'s Ex. 1A-1B.) A motion craving oyer is moot when the subject documents have been produced. *Mack v. Orion Inv. Corp.*, 2002 Va. Cir. LEXIS 468, at *1-2 (Norfolk 2002). The instant motion craving oyer is thus moot. To any extent the motion is not moot, it is denied.

## II. *The Defendants' Plea in Bar*

"[A] plea in bar is a defensive pleading that reduces the litigation [at hand] to a single issue [that], if proven, creates a bar to the plaintiff's right of recovery. The party asserting a plea in bar carries the burden of proof." *Cooper Indus., Inc. v. Melendez*, 260 Va. 578, 594 (2000) (internal citations omitted) (first alteration in original).

Under Virginia law, a shareholder has no standing to maintain a derivative suit unless he first makes a written demand that the corporation bring suit in its own right. Va. Code § 13.1-672.1(B)(1). "Thus, the demand must be made in every case." *RBA Capital, L.P. v. Anonick*, 2009 U.S. Dist. LEXIS 29266 (E.D. Va. 2009). As such, an allegation that a demand was not made prior to the filing of a derivative suit is properly the subject of a plea in bar. *See Richelieu v. Kirby*, 48 Va. Cir. 260, 263-64 (1999). " 'Where no evidence is taken in support of a plea in bar, the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue presented.' The facts as stated in the pleadings by the plaintiff are taken as true for the purpose of resolving the special plea." *Niese v. City of Alexandria*, 264 Va. 230, 233 (2002) (internal citation omitted). The only evidentiary addition to the pleadings were the two written demand letters that were the subject of the motion craving oyer.

In the instant case, the Defendants claim that Williams failed to make a written demand as required under Va. Code § 13.1-672.1(B) and, therefore, lacks standing to maintain his suit. (Pl. in Bar ¶ 7.) "The closest [Williams] has come to such a written demand is his repeated requests for access to the corporate financial records, which" Defendants claim, "is irrelevant for purposes of a derivative proceeding." *Id.* ¶ 6. Williams, however, contends that two of his requests, his letters of August 8 and September 8, 2011, are enough to satisfy Va. Code § 13.1-672.1(B)(1)'s written demand requirement. *See* (Def.'s Ex. 1A-1B.)

This case presents a question of first impression: what components must a document have before it can be deemed to satisfy Virginia's written

demand requirement? In resolving this question, the Court looks to the rules established in North Carolina, where the statutory demand requirement is nearly identical to Virginia's:

> No shareholder may commence a derivative proceeding until:
>     (1) A written demand has been made upon the corporation to take suitable action; and
>     (2) 90 days have expired from the date the demand was made unless, prior to the expiration of the 90 days, the shareholder was notified that the corporation rejected the demand, or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period.

N.C. Gen. Stat. § 55-7-42 (1995). As is true in the Virginia statute, "the form of the demand is not specified" in the North Carolina statute, "except to require that it be in writing." *LeCann v. CHL II, L.L.C.*, 2011 NCBC 29, at *24 (2011) (internal citation and quotation marks omitted). Even so, North Carolina courts have opined that:

> [T]o serve its purpose, [the document] should set forth the facts of share ownership and describe the redress demanded with enough particularity to allow the corporation either to correct the problem, if any, without a lawsuit or to bring its own direct action. . . . The demand must be made with sufficient clarity and particularity to permit the corporation to assess its rights and obligations and determine what action is in the best interests of the company.

*Id.; see also Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 96 (1991) ("The purpose of [a statutory] demand requirement is to afford the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right." (internal citations and quotation marks omitted.)). In deciding whether the document at issue has served this purpose, a court "must compare the derivative claims asserted in a complaint against the specific demands a plaintiff has made prior to filing suit." *LeCann*, 2011 NCBC 29, at *24.

North Carolina courts have applied these rules in several cases. In *LeCann v. CHL II, L.L.C.*, the plaintiff brought a derivative suit against the defendant based on the defendant's alleged self-dealing and unauthorized transfers of corporate funds. *Id.* at *13. When the defendant objected that the plaintiff had not satisfied the statutory written demand requirement, the plaintiff produced "several emails dating back to 2009 in which [the p]laintiff

demand[ed] that [the defendant] cease transferring corporate funds and . . . return any money already transferred," as well as "two sworn affidavits in which [the plaintiff] testifie[d] that she repeatedly made demands on [the d]efendant to stop diverting funds." *Id.* at \*25. The *LeCann* court found that the plaintiff's submissions satisfied the written demand requirement, as they identified the allegedly wrongful acts that ultimately served as the basis of the plaintiff's derivative suit and demanded redress. The "[p]laintiff's demands," the court stated, "were clear and were particular enough to put [the defendant] reasonably on notice as to the substance of [the p]laintiff's objections." *Id.* at \*25. It was thus proper to allow the plaintiff to bring suit on the corporation's behalf. *Id.*

A similar result obtained in *Green v. Condra,* 2009 NCBC 21 (2009). There, the defendants claimed that the plaintiffs' pre-suit demand focused on the "alleged violations by the [corporation's] Board of [the plaintiffs'] individual rights as shareholders and not on the derivative claims that [were] the gravamen of the [c]omplaint" ultimately filed in the case. *Id.* at \*110. This being so, the defendants argued that the notice "lack[ed] the clarity and particularity necessary to allow the [corporation's] board an opportunity to assess its rights and obligations and determine what action is in the best interest of the company." *Id.* at \*111 (internal citations and quotation marks omitted). The *Green* court disagreed. "The demand letter summarize[d] the purportedly unlawful acts undertaken by the [corporation's] Board," the Court said, and because those "same allegations form[ed] the basis of [the p]laintiff's derivative claims," the demand was sufficient to satisfy the statutory notice requirement. *Id.* at \*116.

The court in *Garlock v. Hilliard,* however, drew an important line. 2000 NCBC 11 (2000). There, the plaintiff's communication, which was addressed to the corporation's attorney, failed to identify any particular wrongdoing on the part of the defendants or demand action on the part of the corporation. *Id.* at \*15, *citing Greene v. Shoemaker,* 1998 NCBC 4, at \*18 (1998). Instead the plaintiff "simply questioned the rationale for the formation of" a new business entity. *Id.* The *Garlock* court held that this communication was insufficient to satisfy the statutory demand requirement. *Id.* Certainly the board could not be expected to take action to redress a wrong when no wrong has been alleged. *Id.*

Taken together, the decisions of the *LeCann, Green,* and *Garlock* courts stand for certain overarching principals. First, the purpose of the statutory demand requirement is to put the corporation on notice of a shareholder's objection to an alleged wrong and permit the corporation an opportunity to redress the wrong. Second, in light of this purpose, it is error to allow a plaintiff to bring a derivative action seeking redress of wrongs not addressed in a written demand, as the corporation has not yet been given the opportunity to redress such wrongs itself. Third, a written demand need not discuss any specific legal theory nor every salient fact ultimately asserted

in a plaintiff's complaint, so long as the contents of the written demand are sufficiently clear and particular to put the corporation reasonably on notice as to the substance of the plaintiff's objections and allow the corporation to address them. The Court finds these principals to be well-founded and adopts them for use in applying Va. Code § 13.1-672.1(B)(1).

The Court will thus consider (1) whether the document at issue identifies an alleged wrong, (2) whether the document demands action on the part of the corporation or its officers to redress the alleged wrong, (3) whether the demands in the document are clear and particular enough to have put the corporation reasonably on notice as to the substance of the alleged wrong and allow the corporation to assess its rights and obligations with regard to the alleged wrong, and (4) whether the alleged wrong and the claims asserted in the plaintiff's complaint are sufficiently connected.

In the instant case, Williams's letters of August 8 and September 8, 2011, identify several alleged wrongs, including failure to provide Williams with Schedule K-1's for 2007 to 2010, failure to provide Williams with federal income tax returns for 2007 to 2010, failure to file tax returns, and breach of fiduciary duty associated with failure to allow Williams access to the Corporation's financial records without court intervention. Williams did not merely inquire about these failures like the plaintiff in *Garlock*, he demanded that they be redressed. The demands were clear and particular enough to put the Corporation on notice about the substance the alleged wrongs. The demands gave the Corporation the opportunity to assess its rights and obligations with regard to the alleged wrongs. Thus, Williams's letters of August 8 and September 8, 2011, constitute "written demands" within the meaning of Va. Code § 13.1-672.1(B)(1), and any wrong addressed therein may properly form the basis of a derivative action.

The final consideration, therefore, is whether any allegation in Williams's complaint relates to a wrong not sufficiently addressed in Williams's written demands. Williams's First Amended Complaint asserts a single claim for breach of fiduciary duty. (Am. Compl. ¶¶ 14-18.) Williams identifies several bases of this claim. First, he accuses the Defendants of "causing [the Corporation] to refuse to permit Williams to inspect and review certain corporate books and records, and by causing [the Corporation] to fail to keep adequate and clear bookkeeping and to fail to file corporate tax returns for a number of years." *Id.* ¶ 16. The Court finds that these allegations clearly relate to the wrongs addressed in Williams's written demands.

Williams goes on to allege, however, that the Defendants "further breached their fiduciary duties inasmuch as, on information and belief, they unlawfully usurped corporate opportunities for their own benefit and not for the benefit of [the Corporation] nor for its minority shareholder Williams . . . including *inter alia*, the development of 'Still-Worldly Eclectic Tapas' of downtown Portsmouth." *Id.* ¶¶ 9, 16. The Court finds that this allegation

is not sufficiently connected to the wrongs addressed in Williams's written demands.

The wrongs alleged in Williams's written demands all relate to the Corporation's financial records and Williams's lack of access to such records. *Id.* Nowhere do the written demands mention usurpation of corporate opportunities. While, in the abstract, a corporation's financial records might contain evidence of usurpation, those same records could also reveal anything from employment irregularities to graft. It is not the duty of a corporation to guess at the ulterior motives for a shareholder's allegation of bookkeeping irregularity, nor to perform a comprehensive audit of its operations every time a shareholder's written demand merely alleges a wrong related to the corporation's bookkeeping. Such general allegations are not of themselves clear and particular enough to put the corporation on notice about a related, but unspecified wrong. It is the duty of the shareholder to inform the corporation of the alleged wrong and permit the corporation to redress it. Williams did not sufficiently demand redress of the alleged usurpation of corporate opportunities in his written demands, and so he is not permitted to seek redress of any alleged usurpation by means of the instant suit.

In accordance with the foregoing analysis, the Court sustains the Defendants' plea in bar with regard to Williams's allegation of usurpation, asserted in portions of paragraphs 9, 10, and 16 of the amended complaint, and overrules the plea in bar in all other respects.

### III. *The Defendants' Demurrer*

"The purpose of a demurrer is to determine whether the pleading [attacked] and any proper attachments state a cause of action upon which relief can be given." *Steward v. Holland Family Props., L.L.C.,* 284 Va. 282, 286 (2012). "A demurrer accepts as true all facts properly pleaded, as well as reasonable inferences from those facts." *Id.* The Defendants cite the principle of *expressio unius est exclusio alterius* for the proposition that, because Va. Code § 13.1-774(C) provides shareholders with a means of obtaining "financial information" from corporations, "the General Assembly has foreclosed any other judicial remedy for" a failure to disclose such information, "including a shareholder's derivative action." (Dem. ¶ 4.) The Defendants therefore demur to that portion of Williams's complaint "alleg[ing] failure to provide financial statements and related information." (Dem. ¶ 6.)

In using the principal *expressio unius est exclusio alterius* "as an aid to construing a statute," the Supreme Court of Virginia has "held that, when a legislative enactment limits the manner in which something may be done, the enactment also evinces the intent that it shall not be done another way." *Commonwealth, ex rel. Virginia Dep't of Corrections v. Brown,* 259 Va. 697, 705 (2000). Va. Code § 13.1-774 provides a mechanism whereby

shareholders may demand a corporation's "financial statements for the most recent fiscal year" and seek a court order backing such a demand should a corporation fail to issue the statements voluntarily. Va. Code §§ 13.1-774(A), (C). Such "financial statements" must minimally "include a balance sheet as of the end of the fiscal year, an income statement for that year, and a statement of changes in shareholders' equity for the year unless that information appears elsewhere in the financial statements," as well as an appropriate accountant's report or accounting statement. Va. Code § 13.1-774(A), (B). Va. Code § 13.1-774 does not, as the Defendants' claim, "govern" when shareholders demand "financial information from [a] corporation," (Dem. ¶ 3.) The statute does not directly address requests for tax-related documentation, see § 13.1-1028 (differentiating between "financial statements" and "federal, state and local income tax returns and reports" in the context of limited liability companies), nor accounting records. Va. Code § 13.1-770 (differentiating between "financial statements" and "accounting records"). At most, the statute provides an avenue whereby shareholders may obtain a court order requiring a corporation to provide the shareholder with a comparatively skeletal financial statement consisting of a balance sheet, income statement, statement of changes in shareholders' equity, appropriate accountant's report or accounting statement, and any supplementary information the corporation may wish to include.

Williams is not, by means of the instant case, attempting to obtain an annual financial statement from the Corporation. (Am. Compl. at 4-5.) Williams is attempting to have the Defendants found liable for breach of fiduciary duty, recover damages for the alleged breach, and have any harm to the Corporation corrected. *Id.* Thus, the "something" to be done in this case, determination of whether a breach took place and, if necessary, remedy of that breach, differs considerably from the "something" to be done under Va. Code § 13.1-774 (transfer of a financial statement from corporation to shareholder). *See Brown*, 259 Va. at 705. As such, the principal of *expressio unius est exclusio alterius* does not foreclose Williams's suit against the Defendants. Indeed, the Defendants themselves point out that "mention of a specific item in a statute necessarily implies that the omitted items were not intended to be included." (Dem. ¶ 4.) The Court will not "add language to the statute that the General Assembly declined to employ" by extending Va. Code § 13.1-774's application beyond the context of a shareholder's attempt to obtain an annual financial statement from a corporation. *See Virginian-Pilot Media Cos., L.L.C. v. Dow Jones & Co.*, 280 Va. 464, 468 (2010). The terms of Va. Code § 13.1-774 foreclose no portion of Williams's suit for breach of fiduciary duty. The Defendants' demurrer is overruled.

## *Conclusion*

Having disposed of the Defendants' demurrer, plea in bar, and motion craving oyer as discussed in this opinion, the Court does not reach the matter of the Defendants' motion to quash. Should the parties still wish to be heard on that matter, they may notice the motion for hearing as they see fit.