# CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Nancy O'Brien,
co-executor
of the Estate of
Nancy Midgett,
deceased

v.

Robert Preston Midgett, II

April 5, 2016

Case No. CL15-5459

BY JUDGE DAVID W. LANNETTI

Today, the Court rules on the demurrer and motion to dismiss filed by Defendant Robert Preston Midgett, II, related to the Complaint filed by Plaintiff Nancy O'Brien as co-executor of the Estate of Nancy Midgett (the "Estate"), derivatively on behalf of Jungle Golf of Virginia Beach, Inc. ("Jungle Golf"). Nancy Midgett died testate on January 5, 2014. (Compl. ¶ 3.) A Motion To Stay Discovery pending the outcome of these motions was filed at the same time and has been granted. The issue before the Court on demurrer is whether O'Brien's pre-suit written demand satisfies the requirements of § 13.1-672.1(B)(1) of the Code of Virginia. A plea in bar is the more appropriate mechanism to evaluate the sufficiency of a written demand, and, by agreement of the parties, the Court, therefore, treats Midgett's demurrer as a plea in bar. See March 23, 2016, Order. Because the Court finds that the written demand provided by O'Brien on behalf of the Estate put Jungle Golf reasonably on notice of the Estate's objection to

certain alleged wrongs and permitted Jungle Golf an opportunity to redress the alleged wrongs, the written demand satisfies the Code requirements, thereby conferring on the Estate standing to initiate this derivative action.

The Court, therefore, overrules the Plea in Bar and denies the Motion To Dismiss.

## Background

The Estate owns seventy percent of the issued and outstanding stock of Jungle Golf, a Virginia stock corporation that owns and operates a miniature golf course located in Virginia Beach, Virginia. (Compl. 1.) Midgett owns the remaining thirty percent of stock in Jungle Golf, is president of the corporation, and, as of Nancy Midgett's death, holds one hundred percent of the corporate voting rights. (*Id.* at 2.) Midgett also has been an employee of Jungle Golf since 1982, and he took over day-to-day control of the corporation in 1994. (*Id.*)

On September 1, 2015, O'Brien, acting in her capacity as co-executor of Nancy Midgett's estate, sent an email (the "Email") to Midgett. The Email states that "the salary and benefits [Midgett has] been taking out of the company are excessive and the excess amounts [Midgett] received will need to be repaid to the company." (*Id.*) The Email also "present[s] two proposals" and "disclose[s] a third possible outcome." (Dem. Ex. A; March 23, 2016, Order.) Both proposals "require that arrangements be made for the repayment of [Midgett's] outstanding $108,000 company loan." (*Id.*) The Email also notes that Midgett "purchased the golf course's adjacent property in the name of [Midgett's] separate corporation, Catch a Wave," and asserts that "Jungle Golf should be the owner of this property." (*Id.*)

Suggesting that Midgett "obvious[ly] . . . view[s] Jungle Golf as [his] personal company," O'Brien first proposes that Midgett purchase the shares to which O'Brien and her sister, Kim, are to receive through the Estate. (*Id.*) The Email alternatively proposes that Midgett, O'Brien, and Kim operate Jungle Golf as a family-owned business, which would involve operating the corporation "fairly to all shareholders." (*Id.*) In order to proceed with the second proposal, O'Brien sets forth the following requirements: (i) "[Midgett's] salary and fringe benefits will need to be adjusted to bring them in line with the market value of the actual services [he] render[s]";[1] (ii) the neighboring property purchased by Catch a Wave, L.L.C., "should be owned by Jungle Golf" and should be conveyed to Jungle Golf; (iii) "[t]erms need to be agreed on for [Midgett's] repayment of the $108,000 of Jungle Golf funds that [he] loaned to [himself]"; (iv) "[a] point of sale ('POS') system, needs to be installed in order to minimize cash loss otherwise inevitable with the cash nature of Jungle Golf's business"; (v)

---

[1] O'Brien claims that Midgett's salary and fringe benefits are comprised of a "$150,000 salary and significant fringe benefits you are receiving (another $50,000?)." (Dem. Ex. A.)

"[a] fair dividend payment policy will need to be established"; and (vi) "Kim's and [O'Brien's] shares will need to be redeemed" for cash. (*Id.*)

The Email states that, if Midgett does not agree to one of the proposals, O'Brien — presumably on behalf of the Estate — "will be forced to ask the court to cause repayment of the excessive salary and loan, and will ask for a judicial dissolution of Jungle Golf and a sale of its property." (*Id.*) O'Brien also requests a response to the Email within seven days. (*Id.*) Midgett apparently did not respond to the Email.

On December 18, 2015, more than ninety days after the Email was delivered to Midgett, O'Brien filed a derivative action complaint against Midgett in her capacity as co-executor of the Estate. There is no dispute that the September 1, 2015, Email was delivered at least ninety days prior to the filing of the Complaint on December 18, 2015. (*Compare* Dem. Ex. A with Compl.) In the Complaint, O'Brien seeks the following from Midgett: (i) return of "excessive compensation," calculated as $115,000 per year since 2012 ($150,000 salary plus $20,000 benefits minus $55,000 fair market compensation) and $55,000 for 2011 ($90,000 salary plus $20,000 benefits minus $55,000 fair market compensation); and (ii) return of a $108,000 loan, with interest. (*See generally* Compl.)

The Complaint seeks recovery of "excessive compensation," at least under Count II, for the sixty months preceding the filing of the Complaint. (*See* Comp. 6.) It is unclear how O'Brien calculated her claimed damages of $700,000, as the past sixty months of "excessive compensation" according to the plain terms of the Complaint would be approximately $630,000 (four years of $115,000 excess and one year of $55,000 excess). (*See id.* at 5-6.)

Midgett subsequently demurred to the Complaint. After oral argument on the demurrer and motion to dismiss at the March 11, 2016, hearing (the "Hearing"), the Court took the matter under advisement. The parties subsequently agreed that the Court should treat the demurrer as a plea in bar in order to properly consider the alleged written demand, which was attached to the Demurrer but not to the Complaint, and the Court elected to do so. (*See* March 23, 2016, Order.) The Court now rules on the pending matters.

## Positions of the Parties

### A. *Midgett's Demurrer, Motion To Dismiss, and Motion To Stay Discovery*

Midgett demurs to the Complaint on the ground that the Estate failed to issue a proper written demand on Jungle Golf to take suitable action against Midgett to remedy the alleged wrongs as required by § 13.1-672.1(B)(1) of the Code of Virginia and that the Estate, therefore, does not have standing to file a derivative action. (Dem. and Mot. To Dismiss 1.) If the Court sustains the Demurrer, Midgett requests the Court also grant his Motion To

Dismiss, as the Estate will lack standing to bring this derivative action. (*Id.* at 2.) Midgett also requests the Court to stay discovery until it rules on his Demurrer and Motion To Dismiss. (Mot. To Stay Disc. 1.) *See supra.*

## B. *O'Brien's Opposition*

O'Brien did not file a written response to Midgett's Demurrer but argued at the Hearing the following: (1) the facts surrounding the alleged written demand are undisputed; (2) the issue surrounding the written demand is more properly addressed by a plea in bar; and (3) the written demand was adequate to confer standing upon O'Brien to bring this derivative action. Specifically, O'Brien argued that the written demand raises the same issues as those raised in the Complaint and that the Email demands that Jungle Golf redress those issues.

## Analysis

### A. *Legal Standard*

A corporate shareholder lacks standing to initiate a derivative suit without first making a "written demand" that the corporation redress the alleged wrongs and waiting ninety days. Va. Code § 13.1-672.1(B)(1) (Repl. Vol. 2011). "[A]n allegation that [written] demand was not made prior to the filing of a derivative suit is properly the subject of a plea in bar." *Williams v. Stevens*, 86 Va. Cir. 385, 386 (Norfolk 2013).

A plea in bar presents a distinct issue that, if proven, creates a bar to the plaintiff's right of recovery. *Hilton v. Martin*, 275 Va. 176, 177, 654 S.E.2d 572 (2008). The purpose of a plea in bar is "to narrow the litigation by resolving an issue that will determine whether a plaintiff may proceed to trial on a particular cause of action." *Hawthorne v. VanMarter*, 279 Va. 566, 578, 692 S.E.2d 226, 234 (2010).

The moving party has the burden of proving the dispositive fact raised in a plea in bar. *Tomlin v. McKenzie*, 251 Va. 478, 480, 468 S.E.2d 882, 884 (1996). As with a demurrer, the facts contained within a complaint are considered true for purposes of a plea in bar. *Id.*

According to the Code of Virginia:

> No shareholder may commence a derivative suit until:
> 1. A written demand has been made on the corporation to take suitable action; and
> 2. Ninety days have expired from the date delivery of the demand was made unless (i) the shareholder has been notified before the expiration of 90 days that the demand has been rejected by the corporation or (ii) irreparable injury to the

corporation would result by waiting until the end of the 90-day period.

Va. Code § 13.1-672.1(B).

## B. *Discussion*

The Court has considered the pleadings, the Email, oral argument at the March 11, 2016, hearing, and applicable authorities.

### 1. *The Email Satisfies the Statutory Requirements of a Valid Written Demand*

Under Virginia law, a shareholder does not have standing to initiate a derivative suit unless she first makes a written demand that the corporation "take suitable action" to address the alleged wrongs. Va. Code § 13.1-672.1(B)(1). Significantly, the form and required contents of the written demand are not laid out in the statute. Although O'Brien did not expressly allege in the Complaint that the Estate had made a written demand on Jungle Golf that satisfied the requirement of § 13.1-672.1(B)(1) of the Code of Virginia, she now argues that the Email, which Midgett attached as Exhibit A to his Demurrer, satisfies the statutory written demand requirement.

Virginia appellate courts have not addressed what constitutes a satisfactory written demand. To determine what components a document must possess "before it can be deemed to satisfy Virginia's written demand requirement," this Court, as a judge from the Norfolk Circuit Court did previously in a case of first impression, "looks to the rules established in North Carolina, where the statutory demand requirement is nearly identical to Virginia's." *Williams*, 86 Va. Cir. at 387-88.

With respect to the requirement for the written demand itself, the two statutes are identical. "No shareholder may commence a derivative proceeding until: (1) A written demand has been made upon the corporation to take suitable action. . . ." Va. Code § 13.1-672.1(B) (Repl. Vol. 2011); N.C. Gen. Stat. § 55-7-42 (2015).

North Carolina courts have developed the following rules to determine whether a document satisfies the written demand requirement: the document (1) "should set forth the facts of share ownership"; (2) should "describe the redress demanded with enough particularity to allow the corporation to either correct the problem, if any, without a lawsuit or to bring its own direct action"; and (3) should include "sufficient clarity and particularity to permit the corporation to assess rights and obligations and determine what action is in the best interests of the company." *LeCann v. CHL II, L.L.C.*, 2011 NCBC 29, at *24 (N.C. Sup. Ct., Wake Cnty. 2011) (referencing N.C. Gen. Stat. § 55-7-42 (1995)). Because the "purpose of a demand requirement is to afford the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that

its best interests will be promoted by not insisting on such right," *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 96 (1991), courts "must compare the derivative claims asserted in a complaint against the specific demands a plaintiff has made prior to filing suit," *LeCann*, 2011 NCBC 29, at *24. In other words, to satisfy the demand requirement, the allegations in the pre-suit written demand must be the "same allegations [that] form the basis of [the] plaintiff's derivative claims." *Green v. Condra*, 2009 NCBC 21, at *116 (N.C. Sup. Ct., Buncombe Cnty. 2009).

Finding North Carolina's interpretation of the written demand requirement persuasive, the *Williams* court set forth the following standards for the demand requirement, which this Court now adopts:

> [T]he purpose of the statutory demand requirement is to put the corporation on notice of a shareholder's objection to an alleged wrong and permit the corporation an opportunity to redress the wrong. . . . [I]n light of this purpose, it is error to allow a plaintiff to bring a derivative action seeking redress of wrongs not addressed in a written demand, as the corporation has not yet been given the opportunity to redress such wrongs itself.

*Williams*, 86 Va. Cir. at 390. Note, however:

> [A] written demand need not discuss any specific legal theory nor every salient fact ultimately asserted in a plaintiff's complaint, so long as the contents of the written demand are sufficiently clear and particular to put the corporation *reasonably* on notice as to the substance of the plaintiff's objections and allow the corporation to address them.

*Id.* at 389-90 (emphasis added).

In consideration of the above principles, this Court, like the *Williams* court, applies the following four-part test in evaluating whether the demand requirement was satisfied:

> (1) whether the document at issue identifies an alleged wrong, (2) whether the document demands action on the part of the corporation or its officers to redress the alleged wrong, (3) whether the demands in the document are clear and particular enough to have put the corporation reasonably on notice as to the substance of the alleged wrong and allow the corporation to assess its rights and obligations with regard to the alleged wrong, and (4) whether the alleged wrong and the claims asserted in the plaintiff's complaint are sufficiently connected.

*Id.* at 390. The Court now looks at each of these four factors in the context of the case at bar.

### a. *The Email Identifies the Alleged Wrongs*

The Court finds that the alleged wrongs now sought to be redressed in the Complaint, excessive compensation and an outstanding corporate loan, are sufficiently identified in the written demand sent by O'Brien to Midgett, *i.e.,* the Email. Specifically, the Email notes that "by any measure, the salary and benefits [Midgett has] been taking out of the company are excessive," and "[t]he $150,000 salary and significant fringe benefits [Midgett is] receiving (another $50,000?) are excessive." (Dem. Ex. A.) The Email also states that Midgett has an "outstanding $108,000 company loan," which the Email requests be repaid. (*Id.*)

Of note, the Email contains additional alleged wrongs for which the Complaint does not seek redress, including the alleged purchase of an adjacent piece of real property and installation of a point of sale system "in order to minimize cash loss otherwise inevitable with the cash nature of Jungle Golf's business." (*Id.*) The Court need not concern itself with whether the Email constitutes a satisfactory written demand on the corporation with respect to those wrongs, as they are not before the Court. *Cf. Williams,* 86 Va. Cir. at 390-91 (sustaining defendant's plea in bar regarding certain counts of the Complaint because they were not included in the related written demand).

### b. *The Email Demands Action on the Part of the Corporation or Its Officers To Redress the Alleged Wrongs*

Although not raised by Midgett, it could be questioned whether an email addressed to Midgett individually, which demanded that Midgett take certain actions, constitutes a demand on Jungle Golf to take corporate action against Midgett. Here, however, Midgett is the only other shareholder, is a director of the corporation, and, in fact, is the president of Jungle Golf. *See White Hall Co. v. Hall,* 102 Va. 284, 288 (1904) (holding that "[a] corporation can only speak through its officers and agents"). Perhaps more importantly, Midgett is the sole voting shareholder, so any corporate action would require *his vote* and would require *his action* on behalf of the corporation. He is the *only* person who can take corporate action to protect Jungle Golf's interests. In light of these unique circumstances, the Court is satisfied that O'Brien's demand on Midgett effectively was a demand on the corporation to redress the alleged wrongs committed by Midgett.

The Court finds that there is a sufficient demand that the corporation redress the alleged wrongs. The Email presents two proposals: (i) Midgett purchase the remaining corporate shares or (ii) Midgett ensure that "Jungle Golf is operated fairly to all shareholders" by, among other things, adjusting

his "excessive compensation" and repaying the $108,000 loan. (Dem. Ex. A.) The Email also states that "the excessive [salary and benefits] you received will need to be repaid to the company," and "both of my proposals require that arrangements be made for the repayment of your outstanding $108,000 company loan." (*Id.*) The Court, therefore, disagrees with Midgett's positions that "[t]here is nothing in th[e Email] that says pay back the excessive compensation" and that "[t]he only place where [O'Brien has] asked for excessive payment money to be paid back is in the complaint." (Tr. 8, 9.) The Court also disagrees with Midgett that the positions taken by O'Brien in the Email, to pay back excessive compensation *received* as well as the loan and to adjust compensation *going forward*, are inconsistent. (Tr. 28-29.) The Email then states that, "[i]f no other acceptable direction is agreed then I will be forced to ask the court to cause repayment of the excessive salary and loan."

c. *The Demands in the Email Are Clear and Particular Enough To Have Put Jungle Golf Reasonably on Notice as to the Substance of the Alleged Wrongs and Allow It To Assess Its Rights and Obligations Regarding Those Wrongs*

In the context of a pre-derivative-suit demand, there are no magic words or talismanic incantations to satisfy the statutory requirement. Instead, the question is whether the demand is clear and particular enough to put the corporation reasonably on notice regarding the alleged wrongs and allow the corporation an opportunity to redress those wrongs.

The Email demands acceptance of one of two proposals, both of which require repayment of Midgett's allegedly excessive salary and benefits as well as the $108,000 company loan provided to Midgett, or preparation for legal action. (Dem. Ex. A.) The Court, therefore, finds that the Estate's demands as expressed in the Email are clear and particular enough to have put Jungle Golf reasonably on notice as to the substance of the alleged wrongs and allow Jungle Golf to assess its rights and obligations with regard to those alleged wrongs.

As discussed *supra,* the Email sufficiently identifies the alleged wrongs set out in the Complaint, excessive compensation and return of a corporate loan. In fact, both the Email and the Complaint identify the alleged wrongs with some degree of specificity.

Both documents state that Midgett's current $150,000 annual salary is excessive and also claim that the value of the annual fringe benefits provided by the corporation, estimated to be "another $50,000?" in the Email and approximately $20,000 in the Complaint, are excessive. (*See id.*; Compl. ¶ 25.) Both refer to the fair market compensation of a full time, full service, general manager of a miniature golf course such as Jungle Golf— "$40,000 per year together with insurance benefits" made by Jungle Golf's general manager according to the Email and $55,000, which includes all

fringe benefits, according to the Complaint. (*See* Dem. Ex. A; Compl. ¶ 25.) Although the Email does not specify a time period during which Midgett allegedly "ha[s] been taking out of the company" excessive compensation, the Complaint appears to be an attempt to recoup excessive compensation based on the applicable statutory limitations periods. (*See* Compl. ¶¶ 33, 35.)

Additionally, although Midgett argued at the Hearing that the Estate is seeking one million dollars in alleged excessive compensation, presumably $700,000 for conversion and $330,000 for breach of fiduciary duty, the Court, based on the plain language of the Complaint, views these as alternative claims. (Tr. 30.)

Both the Email and the Complaint also are specific regarding return of the $108,000 corporate loan. Both imply that interest is owed on the loan; the Email states that "[t]erms need to be agreed on your repayment of the $108,000" loan, and the Complaint demands the $108,000 loan be paid, "with a market rate of interest to be determined, not less than the rate of interest Jungle Golf is charged on its existing debts owed to its creditors." (*See* Dem. Ex. A; Compl. 8.)

Based on the nature of the alleged wrongs and the circumstances present here, Midget also is the best person, and most likely the *only* person, to fully appreciate the extent and amount of any alleged excess compensation paid to him by the corporation and to properly value the loan he received from Jungle Golf. Considering the totality of the circumstances, the Court finds that the Estate's demands as expressed in the Email are clear and particular enough to have put Jungle Golf reasonably on notice as to the substance of the alleged wrongs and allow Jungle Golf to assess its rights and obligations with regard to those alleged wrongs.

### d. *The Alleged Wrongs Identified in the Email and the Claims Asserted in the Complaint Are Sufficiently Connected*

As discussed in the analysis of the prior factor, the alleged wrongs asserted in the Complaint are identified in the Email, so the alleged wrongs identified in the Email and the claims asserted in the Complaint are sufficiently connected. Both adequately address the Executor's demand for return of the excess compensation paid by the corporation to Midgett as well as the $108,000 corporate loan provided to Midgett.

 

The Court, therefore, finds that the Email was sufficient to satisfy the statutory written demand requirement and confer standing on the Estate to bring this derivative action. Midgett's Plea in Bar, therefore, is overruled.

## 2. *Midgett's Motion To Dismiss Is Denied*

Because the Court finds that the Estate has standing to bring this derivative action, Midgett's Motion To Dismiss is denied.

### *Conclusion*

Based on the foregoing, the Court overrules Midgett's Plea in Bar and denies Midgett's Motion To Dismiss.